**TEXAS CO. et al. v. CHICAGO & ALTON R. CO. et al.**

**FUNKS GROVE GRAIN CO. v. ALTON R. CO.**

**No. 7358.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 14, 1940.

Rehearing Denied Feb. 21, 1941.

Silas H. Strawn, Frank H. Towner, Guy A. Gladson, and Bryce L. Hamilton, all of Chicago, Ill., for appellant.

Thos. B. Lantry, C. B. Cardy, and W. F. Garman, all of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This appeal is taken from a decree of the District Court which enforced a repar-

ation award of the Illinois Commerce Commission in favor of claimant-appellee, Funks Grove Grain Company.

The basis of the reparation award was a charge by the receivers of the railways and property of the Chicago and Alton Railroad Company of allegedly excessive rates on Illinois intrastate shipments of coal. The claim for the enforcement of the award was filed in the receivership proceeding of the Chicago and Alton Railroad entitled "The Texas Company, et al. v. The Chicago and Alton Railroad, et al."

The receivers operated the road from August 30, 1922, to July 18, 1931, when the property was sold pursuant to a decree of foreclosure. The defendant-appellant, Alton Railroad Company, is the assignee of the purchasers at the foreclosure sale. The decree of foreclosure and sale provided that the purchaser or its assignee ";shall pay * * * all unpaid indebtedness and liabilities of the receivers * * * incurred in the management or operation" of the road. Thereafter, the receivers were discharged by the District Court on November 9, 1931. By the terms of the order of discharge, the cause was kept open and jurisdiction was reserved to hear and determine all claims against the receivers "which * * * (had) arisen, or may arise, out of said receivership;" and the court ordered all such claims to be filed on or before February 4, 1932. In 1924, pursuant to provisions of Section 72 of the Illinois Public Utilities Act,[1] various shippers filed complaints before the Illinois Commerce Commission charging that unreasonable rates were being exacted by the receivers. On May 17, 1928, the Commission entered an order finding that the rates charged were illegal but reserved jurisdiction to enter reparation awards. Thereafter, a rehearing was granted on petition of the carriers; hearings were held upon such rehearing; and on May 26, 1931, the Commission entered an order finding that the rates exacted from plaintiff were excessive and that plaintiff was entitled to a reparation award. The order of the Commission, however, did not fix the amount due to plaintiff and did not order any payment, but merely provided that the parties make such compromise as they might be able to agree upon.

Thereupon plaintiff filed a claim in the District Court receivership proceedings

[1] Chapter 111⅔, § 76. Smith-Hurd Stats.; Ill.Rev.Stat.1939, c. 111⅔, Sec. 76.

based upon the Commission's order of May 26, 1931. Defendant moved to dismiss the claim; reference was made to a master who reported in 1937 that the order was incomplete and could not form the basis of a suit in a court because of lack of a finding of the amount due and an order for its payment. Thereafter, plaintiff filed an instrument before the Commission styled "First Supplemental Petition" in which it alleged the Commission had failed to make its usual reparation order and plaintiff requested that proceedings be reopened and an enforceable award entered. This petition was denied. Thereafter, plaintiff filed another instrument before the Commission denominated "Petition for Rehearing on Order Denying First Supplemental Petition" which prayed that the Commission grant a rehearing of the matters referred to in the "First Supplemental Petition" and make a reparation order "or in any event make a final appealable order disposing of said claims." This petition was granted in 1938. Thereupon hearings were held at which the receivers entered their appearance; and on March 17, 1939, the Commission entered a reparation order. The order was directed against the Chicago & Alton Railroad Company, the receivers, and the defendant, Alton Railroad Company, severally. Thereafter plaintiff moved the District Court for leave to amend its claim theretofore filed; the court granted leave and also set aside the master's previous report which the court had not yet acted upon. Plaintiff filed its amendment, defendant filed answer thereto, and plaintiff filed a reply. Reference was made to a master who filed a report recommending that the claim be allowed. The District Court approved and confirmed the report and entered a judgment order which adjudicated defendant to be indebted to plaintiff in a stated amount. The District Court allowed plaintiff reasonable attorneys' fees, which were ordered to be taxed and collected as part of the costs of the proceeding.

■ Several of defendant's points of error relied upon for reversal rest upon the contention that the so-called order of May 26, 1931, was a final order denying the claim for a reparation award.

We cannot construe the Commission's entry of May 26, 1931, as a denial of a reparation award since the entry expressly recognizes the claimant's right to reparation for excessive charges. It is in sub-stance a general finding that the claimant is entitled to an award.

The Illinois Commerce Commission has jurisdiction to hear claims against a public utility based upon overcharges and to enter orders that the utility make due reparation for an overcharge; if the utility does not comply with the order the claimant may petition a court for enforcement of the order of reparation. It is clear that the type of order which the Commission is authorized to make is an order which is sufficiently definite for enforcement by decree of a court. In short, the order must direct payment of a fixed sum which represents the amount of the overcharge. The so-called order of May 26, 1931, does not meet the foregoing requirements and is not in any sense a final order which disposes of the reparation claim. Consequently, the cause was still pending and undisposed of when the plaintiff-claimant filed its petition in which it alleged that the Commission had failed to make its usual reparation order and requested that proceedings be reopened and an enforceable award entered. We are of the opinion that it was within the authority of the Commission to act upon such petition and to enter a proper reparation order.

The foregoing conclusion disposes of the arguments of defendant which depend for their validity upon the assumption that the so-called order of May 26, 1931, was a final order and that subsequent proceedings in relation thereto were in the nature of rehearings or proceedings to set aside a previous order.

■ The defendant asserts that the Commission had no jurisdiction to enter a reparation order against either the receivers or the defendant. But if the Commission had jurisdiction to enter the award against the receivers, there is no obstacle to enforcing it against the defendant, Alton Railroad Company, since the latter became liable to pay the award under the terms of the foreclosure sale under which it purchased the property. The only arguments advanced to show lack of jurisdiction over the receivers are that the receivers ceased operation and that they were discharged. Defendant states that "Their (receivers') final discharge on November 9, 1931, terminated all their liabilities and deprived the Commission of power to enter an order directed against them." This assertion does not square with the nature of the entry of discharge. Examination of

such entry discloses that the receivership proceedings were not terminated by the order of discharge. The entry provided that the cause was retained and kept open and jurisdiction reserved to hear and determine all questions theretofore reserved, "including jurisdiction to ascertain and determine all claims * * * against said receivers * * * which have arisen or may arise out of said receivership. * * *" It was also provided that all claims against the receivers might be filed with the clerk of the court or with the present defendant-appellant, and that defendant should have the right, if it so elected, "to be substituted a party in lieu of said receivers, in any or all litigations by or against said receivers now pending on appeal or otherwise, or continue such litigation in the name of said receivers."

We cannot agree that the qualified discharge of the receivers terminated all jurisdiction over the receivers. To so hold it would be necessary to ignore the retention of jurisdiction to determine all claims against the receivers which "have arisen or may arise", the provision for future filing of claims against the receivers, and the final provision, quoted above, which clearly contemplated that there would not be a cessation of litigation then pending by or against the receivers. We are of the opinion that the District Court had authority to retain qualified jurisdiction over the receivers for the purpose recited in the order.

In respect to the merits of the reparation award the defendant opposed the enforcement order on several grounds, of which only the first need be considered by this Court. This ground may be stated as follows: The rates which were attacked by plaintiff and which were found excessive by the Commission were within the limits of a schedule of reasonable maximum rates prescribed by the Commission prior to the exaction of such rates. It follows, therefore, as a matter of law, that the Commission could not make a finding that rates were excessive which at the time of exaction, were within the limits of the schedule of reasonable maximum rates prescribed by the Commission.

The District Court first held that no question on the merits could be considered because it would involve a collateral attack upon the reparation award. Thereafter, the District Court did consider the merits of the reparation award and upheld it, holding that a rate within the limits of a schedule of reasonable maximum rates prescribed by the Commission was prima facie a reasonable rate but could be shown by the claimant in reparation proceedings to be an unreasonable rate.

■■ It was the theory of the plaintiff below, and the theory is advanced here, that Section 68 of the Public Utilities Act[2] precluded any attack on the merits of the reparation award because no appeal was taken from the reparation award. But under the law of Illinois no appeal will lie from the grant of a reparation award (although an appeal will lie from the denial of a reparation award) and the carrier's only right to review by the courts of a reparation award is in a suit by the shipper to enforce the award. In Medusa Portland Cement Co. v. Illinois Central Railroad Company[3] the court stated that a "public utility has no right even to appeal to the courts from an order of the commission awarding reparation, but in case such an award is made and the utility fails to comply with it, the claimant may petition the court to compel compliance by the utility. It is only in such case that the utility is afforded a review by the court of the commission's order * * *". In Terminal Railroad Association v. Public Utilities Commission[4] the Court concluded that "it was not the intention of the Legislature that an order awarding reparation * * * shall be reviewed on appeal." The court further construed the act to mean that in a suit to enforce an award, the award is "prima facie evidence of the facts stated in the order"; that "this does not preclude in all other respects a de novo hearing on the suit to collect an award"; that "such award does nothing more than provide a right to the complainant to sue for reparation in a court of competent jurisdiction"; and that "it is quite evident that the award of the Commission is not final." This is the Illinois Court's construction of Sections 68 and 72 of the Illinois Public Utilities Act, and is conclusive. Plaintiff seeks to avoid the force of these decisions by urging that the common law writ of certiorari would lie from the award. It is clear, however, that the statutory procedure is exclusive since the Illinois Supreme Court holds that an award is not final and does nothing more

[2] Chapter 111⅔, § 72, Smith-Hurd Stats.; Ill.Rev.Stat.1939, c. 111⅔, Sec. 72.

[3] 287 Ill.App. 549, 5 N.E.2d 782, 788.
[4] 304 Ill. 312, 319, 136 N.E. 797, 800.

than provide the claimant with a right to sue for reparation; that in such suit there is a de novo hearing (with prima facie effect given to the facts stated in the order) and that it is only in such a suit that the utility is afforded review.

Defendant contends that the District Court erred in holding that the Illinois Commerce Commission, in a reparation proceeding, can base an award upon a retroactive finding that certain rates were in fact unreasonable, although such rates, at the time of exaction, came within a schedule of reasonable maximum rates established by the Commission.[5]

The Illinois Constitution[6] provides that "the general assembly shall * * * pass laws establishing reasonable maximum rates of charges * * * on the different railroads in this state." This mandate was recognized by the legislature in 1873 by an act to prevent "extortion" in the rates charged by railroads. The provision which is pertinent to our present discussion is as follows: "The railroad and warehouse commissioners are hereby directed to make, for each of the railroad corporations doing business in this state * * * a schedule of reasonable maximum rates * * *; and said schedule shall in all suits brought against such railroad corporation wherein is, in any way involved the charges of [such road] * * * be deemed and taken in all courts of this state as prima facie evidence that the rates therein fixed, are reasonable maximum rates of charges for the transportation of * * * freights * * *. Said commissioners shall, from time to time, * * * change and revise said schedules."[7]

It is urged by plaintiff that the maximum rates which are included in "a schedule of reasonable maximum rates" are not conclusive; and that the schedule merely furnishes prima facie evidence that the rates fixed therein are reasonable. The plaintiff concludes that in a reparation proceeding a claimant is permitted to show that even rates which are below the maximum rates of the schedule are unreasonable.

We are of the opinion that plaintiff's conclusion is not in accord with the Illinois Supreme Court's construction of the language of the Act of 1873. In Chicago, Burlington & Quincy R. Co. v. People[8] an action of debt had been brought under the Act of 1873 to recover penalties for the charging of extortionate rates. Extortion was defined by the Act as the charging of more than a fair and reasonable rate.[9] The court held that no extortion was committed unless the rates taxed exceeded the schedule of rates made under the authority of the act. The Illinois Court was of the opinion "from an examination of all the provisions of the statute, taken together," that a disregard of the schedule of rates to be prepared by the Railroad and Warehouse Commissioners was a necessary element of the offense against which the statute was directed; and the court made its meaning perfectly clear by the statement "that it is the charging more than the maximum rates fixed by said board of commissioners, which makes the company guilty of extortion, under the statute, within its true intent and meaning." The court further stated that there would be no liability for unreasonable charges "for taking the rates fixed by the schedule, or less rates, * * * even though proof might be made that the rates so taken were more than fair and reasonable rates." In short, the Supreme Court of Illinois construed the language to mean that the rates fixed by the schedule were the maximum rates which could be "deemed and taken in all courts" as prima facie reasonable; but the Court also recognized that rates higher than those fixed in the schedule could be charged without violating the extortion act if such rates were proved to be reasonable. Such rates, however, since they were higher than the maximum reasonable rates of the schedule, could not be "deemed and taken in all courts" as being prima facie reasonable.

In Chicago, Burlington & Quincy R. Co. v. Jones[10] the Supreme Court of Illinois referred to the earlier case of Chicago, Bur-

---

[5] The prevailing view is contrary to the District Court's holding. See Annotations 97 A.L.R. 406; 9 Am.Jur. § 175; Montana Horse Products Co. v. Great Northern R. Co., 91 Mont. 194, 7 P.2d 919.

[6] Art. XI, Sec. 12, Smith-Hurd Stats. Constitution, p. 891; Ill.Rev.Stat.1939, p. 61.

[7] Ill.Rev.Stat.1939, c. 114, sec. 125; Smith Hurd Stats. c. 114, § 125. There-after, the powers and duties thus conferred upon the railroad and warehouse commissioners were conferred upon the Illinois Commerce Commission by the Public Utilities Act. Chapter 111⅔, § 91, Smith Hurd Stats.

[8] 77 Ill. 443, 447.

[9] Chapter 114, § 118, Smith Hurd Stats.

[10] 149 Ill. 361, 375, 37 N.E. 247, 24 L.R.A. 147, 41 Am.St.Rep. 278.

lington & Quincy R. Co. v. People, supra, and, while recognizing that the action in the earlier case was to recover penalties, yet left no doubt that the construction of the language in question in the earlier decision represented the true legislative intent and did not represent a strict construction for purposes of a penalty suit.

■ It is necessary to distinguish between a proceeding before a public utilities commission to change a schedule of maximum reasonable rates for the future and a proceeding to recover alleged overcharges when the overcharges are based upon the reasonable maximum rate fixed by the commission, or, as in the instant case, on a rate less than the maximum rate. This distinction is pointed out by the Supreme Court of the United States in Arizona Grocery Co. v. Atchison T. & S. F. R. Co.[11] We quote the following from the opinion of the Court:

"The Commission's error arose from a failure to recognize that, when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that, when it was sitting to award reparation, it was sitting for a purpose judicial in its nature. In the second capacity, while not bound by the rule of res judicata, it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as of that of the Legislature itself."

We are of the opinion that the distinctions recognized by the Supreme Court of the United States are recognized by the Supreme Court of Illinois. The Illinois Supreme Court has clearly indicated that under the Public Utilities Act the present Commerce Commission does not have the power to set aside previously prescribed reasonable maximum rates and establish a new rate with retroactive effect.

In State Public Utilities Commission of Illinois v. Atchison, T. & S. F. R. Co.[12] the Supreme Court of Illinois declared that the old Railroad and Warehouse Commission had no power to suspend railroad rates which were lower than the maximum rates fixed by the Commission in 1906 and that its successor, the Public Utilities Commission, had no power to suspend rates except after a hearing and taking evidence. The court further stated that where the schedules of rates filed by railroad companies are lower than the maximum rates fixed by the Railroad and Warehouse Commission in 1906 they must be regarded as prima facie reasonable; and that shippers who filed petitions protesting against the rates had the burden of showing that they were unreasonable. But it is clear from the context that the court was referring to changes in a schedule of rates to become effective in the future, the fixing of which is a legislative function. In the course of its discussion the court makes clear that when maximum rates are once established a carrier can rely upon such rates. The court stated that when the Commission "had established maximum rates for the transportation of freight the railroad companies could file their tariffs, which could not exceed the rates, but, of course, they could charge as much less as they chose." That the Illinois Supreme Court recognized the right of carriers to fix their charges in accordance with schedules and to collect for freight transported on the basis of the schedule of rates is made clear by the following statement:

"One of the principal duties of the Railroad and Warehouse Commission was to fix a schedule of reasonable maximum rates, and to change the same from time to time, as might be necessary under changing conditions of transportation. When such schedules were made and the charges fixed the carriers were required to file their tariffs, not exceeding the charges so fixed, and there can be no question but that it was the right of the carriers to fix their charges and be entitled to collect for freight transported accordingly. When the commission had done this its power was exhausted."

■ In our opinion the Supreme Court of Illinois has recognized that the Illinois Commerce Commission has no power, under the Public Utilities Act, to base a reparation award upon a retroactive application of a finding that certain rates were in fact unreasonable, although such rates, when exacted, were within the established schedule of maximum reasonable rates.

We hold that, under the law of Illinois, the Commerce Commission was without authority to make the reparation award in question.

---

[11] 284 U.S. 370, 52 S.Ct. 183, 186, 76 L.Ed. 348.

[12] 278 Ill. 58, 115 N.E. 904, 908.

Since we conclude that the Commerce Commission was without power to enter the reparation award order, it is unnecessary to discuss other questions raised by defendant, including the question of attorneys' fees.

The judgment of the District Court enforcing the reparation award is reversed and the cause remanded to the District Court with directions to set aside the judgment in favor of the plaintiff and to enter its judgment for the defendant.