## JEANNERET v. CHICAGO, B. & Q. R. CO.

(Circuit Court of Appeals, Seventh Circuit. March 22, 1927.)

No. 3789.

1. **Commerce** &#x2295;&rarr;89(2)—**Reasonableness of existing published rate must be passed on and established by Interstate Commerce Commission before seeking reparation.**

Where reparation is sought on the basis of an existing published rate being unjust and unreasonable, the fact that it is so unjust and unreasonable must first be passed on and established by Interstate Commerce Commission.

2. **Commerce** &#x2295;&rarr;89(2)—**Interstate Commerce Commission report, finding rates unreasonable in future, is not definite adjudication authorizing recovery of excessive rates between such time and time order was made effective (Interstate Commerce Act, § 13, par. 2, and § 15, par. 1, as amended by Act Feb. 28, 1920, §§ 416, 418 [Comp. St. §§ 8581, 8583]).**

Report of Interstate Commerce Commission, after investigation on its own motion, finding that present rates of certain commodities would in future be unjust and unreasonable, *held* not definite adjudication that as of that date rates were unjust and unreasonable, so as to authorize action for recovery of charges between such time and date order was made effective, in view of Interstate Commerce Act, § 15, par. 1, as amended by Act Feb. 28, 1920, § 418 (Comp. St. § 8583), and requiring Commission to make order changing rates, and in view of section 13, par. 2, as amended by Act Feb. 28, 1920, § 416 (Comp. St. § 8581), forbidding Commission in proceedings on its own motion to enter orders for payment of money.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by R. A. Jeanneret against the Chicago, Burlington & Quincy Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

E. R. Morrison, of Kansas City, Mo., for plaintiff in error.

K. F. Burgess, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Plaintiff in error (herein called plaintiff), assignee of the claims of various shippers of grain, sued defendant in error (called defendant), alleging payment to defendant, by the shippers,

of unjust and unreasonable freight charges on interstate shipments over defendant's railroad, of grain, grain products, and hay between October 20, 1921, and January 2, 1922. In the declaration these allegations appear: Prior to October 20, 1921, the Interstate Commerce Commission had, upon its own motion, instituted and conducted an investigation of then existing freight rates on these commodities, and on that date made a report finding "that the present rates" on these commodities "will be for the future unjust and unreasonable" to the extent indicated in the report, and that "an order will be entered in accordance with our findings, if that becomes necessary. We shall expect the reductions to be made as soon as practicable, and not later than November 20, 1921." On November 21, 1921, the Commission made an order requiring defendant, by December 27, 1921, to make reductions in its rates on these commodities as in the report indicated, and on December, 23, 1921, the Commission made this further order:

"It appearing to the Commission that it is now physically impossible for many of the carriers respondent in the above-entitled proceedings to prepare, file with the Commission, and publish as required by law, schedules making effective the reduced rates and charges prescribed by the Commission in its order of November 21, 1921, as heretofore modified, on or before December 27, 1921, on one day's notice: 'It is ordered that the order entered in this proceeding on November 21, 1921, which was by its terms made effective December 27, 1921, as modified by order dated December 21, 1921, be and it is hereby further modified, so that it will become effective on or before January 7, 1922, upon not less than one day's notice to this Commission and to the general public in the manner prescribed in section 6 of the Interstate Commerce Act; but in all other respects the said order of November 21, 1921, shall continue in full force and effect.' "

January 2, 1922, defendant put into effect this new reduced rate, and recovery is demanded for the difference between the old and the new rates from the date of the October 20 report. The court sustained defendant's demurrer to the declaration, and, on plaintiff's election to stand by its declaration, judgment for defendant was given.

[1] It is freely conceded that, where reparation is sought on the basis of an existing published rate being unjust and unreasonable, the fact that it is so unjust and unreasonable must first be passed upon and established by the Commission. Texas & Pacific Ry. Co. v.

Abilene Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; National Pole Co. v. C. & N. W. Ry. Co. (C. C. A.) 211 F. 65, is much relied on to uphold the declaration. There this court held that where shippers made complaint to the Commission of a carrier's discriminatory practice, and the Commission found against the carrier, suit in court might be maintained by another shipper, damaged in the same way, by the same discriminatory practice.

[2] But is the October 20 report to be regarded as a definite adjudication by the Commission that as of that date the rates under consideration were unjust or unreasonable? Paragraph 1, section 15, of the Interstate Commerce Act, as amended by Act Feb. 28, 1920, § 418 (Comp. St. § 8583), provides that if, after hearing, the Commission finds a rate charged or collected is or will be unjust or unreasonable, the Commission may determine what will be the just and reasonable rate to be thereafter observed, and "make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds that the same does or will exist."

The proceeding in question was not upon complaint of any one, but on the Commission's own motion. Reparation of damages was in no way involved; indeed, in such proceeding the Commission would have no jurisdiction to award reparation. Paragraph 2, section 13, of the act (amended by Act Feb. 28, 1920, § 416 [Comp. St. § 8581]), which authorizes the Commission to proceed on its own motion, and gives it the same power as it would have on the complaint of another, specifically excepts from that power "orders for the payment of money."

The Commission is given much discretion in the matter of making its reports and orders for compliance, and when we look to the report, as made, it may well be doubted whether the Commission intended the order itself to be a declaration that the rate was presently unjust and unreasonable as to make such finding alone a basis for reparation. The report itself, and especially when considered in connection with the subsequent proceedings of the Commission thereon, seems persuasively to indicate that it was not the intention that the report alone should have the scope of a definite adjudication of the injustice or unreasonableness of the rate as of the date of the report.

It is very plain that the report was not intended to have the form of an order, in its statement that an order "will be entered * * * if that becomes necessary." The re-

port, in effect, invited, but did not require, the carriers to reduce their rates as indicated. While back of the invitation lay the power to enforce compliance, at that stage of the proceedings it was none the less .an invitation, compliance with which did not become compulsory until by further action the Commission fixed the time therefor.

The October 20 report was carried specifically forward into the November 23 order fixing the time when the carriers were to put into effect the reduced rate, and we are of the view that the words in the report, *"will be for the future* unjust and unreasonable,"* have reference, not to the time the report was made, but to whatever time in the future the new rate should be made effective, either voluntarily by the carrier in pursuance of the report, or as the Commission's order might thereafter specify. In view of the quite broad discretion lodged with the Commission in the making of its reports and orders, and the time of effective operation, it is at least helpful, if not controlling, to know what construction the Commission itself has given this very report in this respect, especially where other claimants demanded of the Commission reparation predicated solely on the assumption that the report of October 20 so definitely and conclusively fixed the then existing rate as unjust and unreasonable as to warrant reparation, without further evidence that the existing rate was unjust and unreasonable.

In Northern Grain & Warehouse Co. v. O. S. L. R. R. Co. et al., 100 Interst. Com. Com'n R. 319, reparation was claimed on shipments after the October 20 report, on the ground that the Commission had thereby found the theretofore existing rates unjust and unreasonable from that date. The Commission found the old rates assailed were not shown to be excessive from that date, and dismissed the complaints, saying:

"By section 15 (2) of the Interstate Commerce Act it is required that our orders, other than orders for the payment of money, shall take effect within such reasonable time, not less than 30 days, as may be prescribed. in the order. So, also, we are authorized to modify our orders whenever deemed by us to be necessary. The orders in the Grain Case clearly indicate, as modified, that January 7, 1922, was considered to be a reasonable time

within which compliance with the findings should be effected. As the report is made a part of the orders by reference, they must be considered as one. Our conclusion, upon consideration of the record before us, was that rates in effect at the time of our report and orders would be unreasonable on and after January 7, 1922, to the extent indicated. In our report we said: 'They are, in brief, conclusions which look to the future.' While we found 'that the *present* rates will be *for the future* unjust and unreasonable,' that finding does not become binding until ordered into effect. The effective date of the order, as finally fixed, was January 7, 1922. The rates thus found reasonable were not prescribed as reasonable on shipments moving prior to January 7, 1922, any more than on shipments moving the day after the decision was rendered. We have frequently found that a finding of unreasonableness for the future does not necessarily constitute a basis for an award of reparation. In the present record complainant offered no evidence bearing upon the reasonableness of the rates in effect when these shipments moved."

In Bartling Grain Co. v. Missouri Pac. R. R. Co. et al., decided by the Commission August 27, 1926, 115 Interst. Com. Com'n R. 441, the Commission reached the same conclusion respecting other such claims for reparation based upon same report, holding that by its report such fact was not determined as of that date, and dismissed the complaints for lack of proof of unreasonableness of the rate assailed.

The identical question was before the Eighth Circuit in C., B. & Q. R. R. Co. v. Merriam & Millard Co., 297 F. 1. After full consideration the court, in denying the shipper's right to sue, concluded "that until the Commission has, as an official body of technical experts, declared the existence of a right to reparation because of shipments of grain made after its finding and opinion, and before the effective date of its subsequent order, by some order fixing the right to such reparation, an action of this kind may not be maintained." With these conclusions of the Commission and of the Circuit Court of Appeals of the Eighth Circuit we are in accord.

The judgment of the District Court is affirmed.