Des Plaines Lumber & Coal Company, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

**Gen. No. 32,299.**

Opinion filed June 20, 1928. Rehearing denied July 5, 1928.

J. A. CONNELL and SIDNEY F. BLANC, for appellant; KENNETH F. BURGESS and J. C. JAMES, of counsel.

CHARLES V. FALKENBERG, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action brought by the plaintiff shipper against the defendant carrier to recover the sum of $104.97, with interest, being, as plaintiff claims, a freight charge on a shipment of lumber in excess of the lawful rate charged by the defendant carrier, and paid by the shipper who at the time of such payment did not know that the charge was excessive.

At the threshold of this review we are confronted with a jurisdictional question, which will, as it must, be decided in favor of the defendant carrier who raises the question. If the municipal court was, as we hold, without jurisdiction of the cause of action, then all the other questions raised and argued become immaterial for judicial construction or opinion.

The shipment in question, being intrastate, the rate was the province of the Illinois Commerce Commission to fix.

Defendant carrier raises this jurisdictional question by assigning and arguing as error that "The Municipal Court was without jurisdiction because controverted questions of fact had not been passed upon by the Illinois Commerce Commission." The plaintiff shipper in a measure endeavors to excuse its conduct in commencing its action in the municipal court by

the statement that the statute of limitations for relief by the Illinois Commerce Commission is three years, and had run prior to commencing this action, so that at that time, the Illinois Commerce Commission was without jurisdiction and impotent to grant any relief. Consequently the plaintiff argues the 5-year limitation statute of this State applies to a common-law action to recover the excess over the legal rate charged by the carrier, and therefore justifies the shipper's resort to the municipal court. However, we are not inclined to agree with the argument that because plaintiff delayed action until after the limitation statute debarred plaintiff from seeking redress in the forum of the Illinois Commerce Commission the municipal court could take jurisdiction of the action.

There is no material difference between the provisions of the Interstate Commerce Act and the Illinois Public Utilities Act. Section 9 of the Interstate Commerce Act (section 7894, Barnes Federal Code 1919) provides that any one damaged by a violation of the act may either file complaint before the commission or bring suit in court, and having adopted one remedy cannot pursue the other. By section 13 the commission is empowered to hear and determine complaints arising from violations of the act, and section 16, paragraphs 1 and 2 (section 7905, Barnes Federal Code) provides for an enforcement of an order for damages or reparation by suit in the United States District Court upon such order. Section 72 of the Public Utilities Act, Cahill's St. 1927, ch. 111a, ¶ 91, authorizes the commission upon complaint filed to order the public utility to make reparation of excessive freight charges, and provides for the enforcement of the order by an action at law upon such order, being virtually the same as under section 13 of the Interstate Commerce Act. *(Jefferson Deposit Co. v. Central Illinois Light Co. of Peoria,* 309 Ill. 262.) Section 73 of the Public Utilities Act, *supra,* gives to the party

damaged the right to bring suit for damages for a violation of the act.

In *Terminal R. Ass'n of St. Louis v. Public Utilities Commission,* 304 Ill. 312, it is stated: "The similarity between the Interstate Commerce act and our Public Utilities act makes the decisions of the Supreme Court of the United States persuasive as to the correct rule to be adopted in this State." Heeding this statement we are persuaded to follow the Federal decisions in our solution in the instant case of the jurisdictional question raised and argued.

The making of railroad tariffs involves many technical questions which call for solution by a practical man, expert in all the varied conditions which of necessity enter into the question of correctly fixing tariff rates. It is self evident that the average judge has not such expert knowledge, so that in the interest of uniformity the question of fact entering into the fixing of tariff rates should be passed upon by the commerce commission, not by the courts.

In *Great Northern Ry. Co. v. Merchants Elevator Co.,* 259 U. S. 285, the court said:

"Where the document to be construed is a tariff of an interstate carrier, and before it can be construed it is necessary to determine upon evidence the peculiar meaning of words or the existence of incidents alleged to be attached by usage to the transaction, the preliminary determination must be made by the Commission; and not until this determination has been made can a court take jurisdiction of the controversy. If this were not so, that uniformity which it is the purpose of the Commerce Act to secure could not be attained."

It therefore follows under this *dicta* that the State commission was the forum plaintiff should have first sought. Furthermore, it is no excuse for not having so done that plaintiff was barred from so doing by the statute of limitations closing the door when it appealed to the municipal court.

In *Texas & P. Ry. Co. v. American Tie & Timber Co.,* 234 U. S. 138, the court said: "* * * it is equally clear that the controversy as to whether the lumber tariff included cross-ties was one primarily to be determined by the Commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statute. Indeed, we think it is indisputable that that subject is directly controlled by the authorities which establish that, for the preservation of the uniformity which it was the purpose of the act to regulate commerce to secure, the courts may not, as an original question, exert authority over subjects which primarily come within the jurisdiction of the Commission."

It follows in the instant case therefore that before the court could take jurisdiction, the commission must first fix the tariff so that the court might therefrom be able to judge whether or not there was an excess charge. Without such fixing of the tariff the courts have no jurisdiction.

As to the question of what was a through rate there was a conflict of evidence. Such conflict makes it necessary to determine as to what was a through rate within the meaning of the tariffs invoked and whether usage and custom fixed a through rate as contended. Until this question was fixed by the commission the courts were without jurisdiction to determine the rate. It appears from the evidence that the questions here involved were at the instance of third parties at the time plaintiff started its suit pending before both the Interstate and Illinois Commerce Commission and undetermined.

In *Northern Pacific Ry. Co. v. Solum,* 247 U. S. 477, the court in its opinion stated:

"The railway contends that, since the administrative question upon which its liability depends involves the reasonableness of a practice in interstate com-

merce and the traffic actually moved in interstate commerce, the court had no jurisdiction to adjudicate the controversy until that administrative question had been determined by the Interstate Commerce Commission. The shipper, on the other hand, urges that the rule which requires such preliminary determination of administrative questions by the Commission applies only to those cases where the question involved is whether a particular rate is unreasonable or whether a particular practice is discriminatory. But the rule is not so limited. It applies, likewise, to any practice of the carrier which gives rise to the application of a rate. *Texas & P. R. Co. v. American Tie & Timber Co.,* 234 U. S. 138, 147, 59 L. ed. 1255, 1258, 34 Sup. Ct. Rep. 885; *Pennsylvania R. Co. v. Puritan Coal Min. Co.,* 237 U. S. 121, 131, 59 L. ed. 867, 873, 35 Sup. Ct. Rep. 484; *Pennsylvania R. Co. v. Clark Bros. Coal Min. Co.,* 238 U. S. 456, 469, 59 L. ed. 1406, 1412, 35 Sup. Ct. Rep. 896. The Interstate Commerce Commission has frequently entertained proceedings for refunds for misrouting under such circumstances. Indeed, long before these suits were filed, proceedings had been begun before the Interstate Commerce Commission against this and other railroad companies to secure the refunds of amounts paid for shipment over the interstate routes between Minnesota points in excess of that which would have been payable if shipment had been made over the intrastate routes. *Holmes & H. Co. v. Great Northern R. Co.,* 37 Inters. Com. Rep. 627, 630, 645, 649. And before the judgments were entered by the Supreme Court of Minnesota in these cases, the Interstate Commerce Commission had determined that, under the circumstances, 'the carrier was not required by law to change its methods of operation and abandon the use of its more favorable interstate line;' and had refused to grant refunds in respect to the shipment of other com-

modities, under circumstances precisely like those presented.''

It would seem that this pronouncement of the law is strikingly applicable to the instant case and strongly emphasized the necessity of the rule that controverted questions of fact must be submitted to the commission in the first instance so that the courts may be guided by the commission's findings of fact. Such findings are a *sine qua non* to the court's jurisdiction and may not be dispensed with, for without such findings by the commission the courts are without jurisdiction.

In *Commerce Commission v. Cleveland, C., C. & St. L. Ry. Co.*, 309 Ill. 165, the court laid it down as a rule of procedure that:

''It is the duty of courts to weigh and consider the evidence, and if it is found that the order of the commission is without substantial foundation in the evidence it should be set aside. On the other hand, it is not intended that the courts should assume the duties of the commission and try new matters within its jurisdiction, and if from any reasonable view of the evidence the commission's order rests on a reasonable and substantial basis and does not infringe any of the constitutional rights of the parties it should be sustained.''

The Illinois Public Utilities Act provides that an appeal will lie to the courts from the orders and rulings of the commerce commission. Therefore by analogy it can be consistently argued that it was the intention of the legislature that the commission should first fix rates by an appropriate tariff ruling before the courts would acquire jurisdiction of any tariff dispute.

For the foregoing reasons the judgment of the municipal court is reversed with directions to that court to dismiss the suit at plaintiff's costs.

*Judgment reversed with directions.*

WILSON and TAYLOR, JJ., concur.