## NATURAL GAS PIPELINE CO. OF AMERICA et al. v. FEDERAL POWER COMMISSION et al.

### No. 7454.

Circuit Court of Appeals, Seventh Circuit.

Sept. 3, 1942.

138

See, also, 128 F.2d 481 and 129 F.2d 515.

George I. Haight, of Chicago, Ill., for Natural Gas Pipeline Co. and Texoma.

Kenneth F. Burgess and Francis L. Daily, both of Chicago, Ill., for Chicago District Pipe Line Co. and Peoples Gas, Light & Coke Co.

Harry J. Dunbaugh, of Chicago, Ill., for Public Service Co. of Northern Ill., and Ill. Northern Utilities Co.

Benjamin Alschuler, of Aurora, Ill., for Western United Gas & Electric Co.

George Slaff, of Washington, D. C., for Federal Power Commission.

Floyd E. Thompson, of Chicago, Ill., for Consumers (in a class suit).

S. A. L. Morgan, of Amarillo, Tex., for Texoma Natural Gas Co.

William C. Wines, Asst. Atty Gen., of Ill., for Illinois Commerce Commission.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This case now comes before the court for the entry of a decree determining the ownership of the moneys heretofore paid to the clerk of this court by Natural Gas Pipeline Company of America, pursuant to an earlier order of this court, and for a determination, and for an order of disposition, of such funds, as well as the method of such disposition.

[1] The court finds: (1) That the moneys, amounting to $6,377,913.52, less the Clerk's statutory fees of one percent. and costs and expenses of distribution, belong to the eligible ultimate consumers of the several utilities involved and should be so distributed; that none of the utilities is entitled to such funds.

(2) The court further finds that both the Federal Power Commission and the Illinois Commerce Commission have taken the position that the funds should be distributed among the ultimate consumers of the gas, for whose benefit these proceedings were instituted.

(3) The court finds the amounts stated in the order of the Federal Power Commission, with interest thereon, and less deductions for expenses of distribution and Clerk's fees, are the respective sums due the customers entitled to the refunds. The following is a specific statement of the amounts of principal and interest.

| Name | Amount Stated in Order of Federal Power Commission | Interest | Total |
|---|---|---|---|
| Chicago District Pipeline Company....... | $5,823,577.62 | $88,056.18 | $5,911,633.80 |
| Cedar Rapids Gas Company*............ | 99,693.18 | 1,462.23 | 101,155.41 |
| Central States Electric Company......... | 25,325.46 | 383.08 | 25,708.54 |
| City of Nebraska City................... | 23,622.03 | 369.20 | 23,991.23 |
| Iowa City Light and Power Company*.... | 31,638.60 | 476.52 | 32,115.12 |
| Iowa-Nebraska Light and Power Company | 19,026.90 | 283.25 | 19,310.15 |
| Iowa Power & Light Company.......... | 7,812.45 | 120.85 | 7,933.30 |
| Illinois Northern Utilities Company...... | 7,158.78 | 13.56 | 7,172.34 |
| Kewanee Public Service Company........ | 9,291.70 | 79.40 | 9,371.10 |
| Ottumwa Gas Company*................ | 24,635.34 | 375.26 | 25,010.60 |
| Peoples Light Company*................ | 101,527.83 | 1,518.78 | 103,046.61 |
| Peoples Power Company*................ | 107,082.81 | 1,583.11 | 108,665.92 |
| Princeton Gas Service Company.......... | 659.50 | 1.47 | 660.97 |
| United Gas Service Company............ | 2,097.66 | 40.77 | 2,138.43 |
| Totals ...............'............. | $6,283,149.86 | $94,763.66 | $6,377,913.52 |

*Now Iowa-Illinois Gas & Electric Company

The above allocation is subject to the rule as to "qualified communities" hereinafter stated. In the case of Chicago District Pipeline Company, the natural gas which it purchased from Natural Gas Pipeline Company of America was resold to the Peoples Gas Light and Coke Company, Public Service Company of Northern Illinois, Western United Gas and Electric Company and Northern Indiana Public Service Company; and it is to the eligible customers of these four last-named utilities that the refunds should be made. The total amount of excess charges paid by Chicago District Pipeline Company, as found by the Federal Power Commission in its order of April 23, 1942, was $5,823,577.62, exclusive of interest. This sum, together with interest thereon, after the deductions above mentioned, should be divided among the eligible customers of the four utilities purchasing gas from Chicago District Pipeline Company on the basis of the contractual relations between the several companies involved. Such divisions, before such deductions, would be as follows:

er than rates charged for other classes of gas sales. The wide differences between these rates are known to, and have the approval of, regulatory commissions. Moreover, heating and industrial gas sales represent "large volume" uses, for which the cost per unit is lower than where sales are made in smaller volume to large numbers of customers. In consequence, the court deems it equitable to eliminate, so far as practicable, gas sold for industrial and house heating uses from the basis of the refund. Gas sold at rates available solely to industrial customers is not to be provided for in determining those eligible to the refund. Similarly, gas for heating uses, will be largely excluded in determining such eligible customers.

Natural gas is sometimes distributed to ultimate consumers and sometimes is used as a constituent element in a mixture of gas which is distributed to the ultimate consumers. Provision should be made so that this condition will not have the effect of producing inequitable results as among consumers. It would manifestly be in-

| Name | Amount Before Interest | Interest | Total |
|------|------------------------|----------|-------|
| The Peoples Gas Light and Coke Company | $4,077,428.74 | $61,653.33 | $4,139,082.07 |
| Public Service Company of Northern Illinois | 1,230,403.45 | 18,604.47 | 1,249,007.92 |
| Western United Gas and Electric Company | 453,822.84 | 6,862.08 | 460,684.92 |
| Northern Indiana Public Service Company | 61,922.59 | 936.30 | 62,858.89 |
| Total | $5,823,577.62 | $88,056.18 | $5,911,633.80 |

The above allocation is likewise subject to the rule as to "qualified communities" hereinafter stated.

■ (4) The court further finds, as to the customers eligible to receive refunds and the method of payment to each customer, as follows, to-wit: It is commonly recognized with respect to utility charges, that certain rates are established on a basis which meets competitive conditions in a particular field, rather than on a basis related solely to the costs of providing the particular service. Rates established for the sale of gas for industrial use and home heating are the principal rates of this character. The charges are determined in the light of the cost of some competing commodity or service, and are, or may be, low-

equitable to accord identical treatment to all gas customers of a particular utility if, in one community, the natural gas was distributed as such, or formed a large portion of the mixed gas, whereas in another community the natural gas was only a small component part of the gas supply. Precise accuracy in this matter cannot be achieved. We have concluded, and rule, that gas customers entitled to refunds hereunder shall include only those receiving gas service during the refund period in communities (including rural areas) in which at least 12½% of the gas supplied by the utility was derived directly or indirectly, from Natural Gas Pipeline Company. Such communities are referred to as "qualified communities." In the application of this rule,

moneys allocable to the customers of a given utility as a group will be distributed only among those of the eligible customers who received service from that utility in qualified communities.

In arriving at a method of effecting the refunds, the court utilizes the generally known fact that the billing operations of any sizeable gas utility are conducted on a "cycle" basis, such that meter readings are made for varying portions of the utility's customers at varying periods of the month, and that because of the practice of "cycle" billing, it is not necessary that billings of an exact calendar month be used, since the same cyclical result may be obtained by starting with any billing unit in the standard cycle and continuing until a full cycle has been completed.

It is therefore ordered and decreed, that

1. The fund, including interest, aggregating $6,377,913.52, less all fees, costs, and expenses of distribution, belongs to and is the property of the eligible customers and does not belong to the utilities named in the next paragraph of this decree or to Chicago District Pipeline Company.

2. The fund, after the deductions above specified, shall be distributed by the court, in the manner hereinafter provided, among the eligible customers, of the following utilities:

The Peoples Gas Light and Coke Company

Public Service Company of Northern Illinois

Western United Gas & Electric Company

Northern Indiana Public Service Company

Cedar Rapids Gas Company [1]

Central States Electric Company

City of Nebraska City

Iowa City Light & Power Company [1]

Iowa-Nebraska Light & Power Company

Iowa Power & Light Company

Illinois Northern Utilities Company

Kewanee Public Service Company

Ottumwa Gas Company [1]

Peoples Light Company [1]

Peoples Power Company [1]

Princeton Gas Service Company

United Gas Service Company.

All work in effecting such distribution shall be performed under the supervision of Mr. Tappan Gregory, as officer for the court. All expenses connected therewith, and the amounts paid therefor, and for services rendered, shall be fixed by this court save only the Clerk's fees which are fixed by statute.

3. Any customer of the utilities who received gas service during all or any part of the period from August 1, 1940 to March 31, 1942, inclusive, hereinafter called the "refund period," in a qualified community (except at an industrial gas rate) shall be eligible for a refund. He is hereby named "eligible customer." A refund shall be payable to any eligible customer on the basis of the amount billed or treated as having been billed to him during any complete monthly billing cycle commencing not earlier than the date hereof and ending not later than October 31, 1942, for gas service as above defined. The amount of such bill shall be multiplied by the number of months during the refund period in which he received such service. For such purpose, any fraction of a month for which a bill was rendered shall be treated as a month, but the number of months shall not exceed twenty. The resultant amount is the customer's "refund base." The aggregate of the refund bases shall be divided into the net amount available to the customers, in the aggregate, of such utility; and the refund payable to each such customer shall then be computed by multiplying such customer's refund base by the quotient so obtained.

4. To determine the amount of the refund payable to each customer:

(a) Each utility shall expeditiously prepare from its records a list of the customers in qualified communities to whom it has sent a bill for gas service (except industrial) during the billing cycle hereinbefore designated. Such list shall, without improper duplication, contain the name of each such customer, his address and the amount of his bill, and is referred to as the "trial register list."

(b) The utility shall ascertain, if conveniently possible, as to each such customer, whether or not he received such service throughout the refund period.

(c) To each customer found to have received such service throughout the refund

---

[1] Now Iowa-Illinois Gas & Electric Company.

period, there shall be immediately sent a notice approved by and over the name of Mr. Gregory, advising the customer that his eligibility for a refund has been established and he may disregard any request by advertisement or otherwise for information on the subject.

(d) To any customer not found to have received service throughout the refund period there shall be sent a notice approved by and over the name of Mr. Gregory, requesting the customer to advise the utility within five (5) days on an enclosed form provided for that purpose, the address or addresses at which the customer received service from such utility during any part of the refund period. Such notice shall also state that upon the furnishing to the utility of the information requested the customer's eligibility for a refund on account of service furnished by such utility will be ascertained without further notice to him and he may disregard any further request by advertisement or otherwise for information as to service furnished by that utility. Such notice shall state that if during any part of the refund period he received gas service from any other of the utilities named herein he should communicate with said other utility in response to a newspaper advertisement later to be published. The notice last above provided for may be combined with the notice provided for in (c) in a single notice, in Mr. Gregory's discretion.

(e) The utility shall expeditiously add to the trial register list the names of any other persons shown by its records to have received such gas service during the specified billing cycle, but who failed to receive bills, and shall send to such additional persons the appropriate notices.

(f) The utility shall likewise adjust the said list so as to state opposite the name of any customer so added to said list the amount determined as representing a normal billing to such customer in such billing cycle. Such amount shall be determined by the utility in accordance with its usual practice in computing "average" bills.

(g) The utility shall expeditiously adjust any customer's bill which during said billing cycle was abnormal, in accordance with its usual practice, so as to cause the said list to reflect a normal billing to that customer for such cycle.

(h) Mr. Gregory shall promptly, after October 31, 1942, cause to be published once in each qualified community, by means of one or more newspapers having general circulation in such community a notice addressed to the gas customers of all of the said utilities, advising them that any such gas customers (except industrial gas users) of such utilities during the refund period, who has not received a notice from such utility of the establishment of his eligibility, should give information to such utility, either upon a coupon furnished with such advertisement or otherwise, in writing, as to the address or addresses at which he so received such service. Such advertisement shall notify the customer that if he had theretofore given to a utility written information as to such gas service received by him from it, he should not repeat to that utility such information in response to the advertisement and shall also state that eligibility will depend upon the verification of the information by the records of the utility. The advertisement shall also state that unless the requested information shall be received from the customer within 5 days from the date of the advertisement (whether in response to the advertisement or otherwise) it will be disregarded in determining eligibility.

(i) On the basis of all the information so obtained, the utility shall, after verification thereof, further adjust its trial register list by including the names of any newly ascertained eligible customers.

(j) Opposite the names of any customer so added to the list as provided in (i), the utility shall place an amount determined in accordance with its usual practice as representing a normal billing to such customer for the billing cycle on the basis of which such list was prepared.

(k) Opposite the name of each customer included in said list as so corrected, the utility shall state the number of months within the refund period during which such customer received from it gas service (except for industrial use) and shall strike the names of all customers who have not been ascertained to have received such service during any part of the refund period. It shall then state opposite each remaining name the refund base (being the product of said bill multiplied by the number of months of service shown).

(l) The utility shall add together the refund bases of all the customers on the final list, and shall show the total.

(m) The utility shall thereupon certify such total to Mr. Gregory as shown by the

completed listed prepared as above described (hereinafter referred to as the "eligible customer list"). The utility shall at the same time certify and furnish to Mr. Gregory a statement listing all the communities in which gas originally derived by it, directly or indirectly, from Natural Gas Pipeline Company of America entered into the gas supplied by the utility during the refund period or any part thereof. In such statement, the communities shall be divided into two groups, one group consisting of qualified communities and the other of unqualified communities, and the basis for such classification shall be shown therein as to each community or group of communities. Such statement shall also show the number of eligible customers in each qualified community.

(n) Mr. Gregory shall submit an estimate of all costs and expenses of effecting such refund. He shall report, as to each of the several utilities, the aggregate of the refund bases of its eligible customers.

(o) The court will then determine the total net amount available for refund, and the portions thereof applicable to the eligible customers, in the aggregate, of each utility.

(p) Mr. Gregory shall then cause each utility to enter on its eligible customer list the amount of refund payable to each customer.

(q) Each utility shall thereupon certify to Mr. Gregory its eligible customer list showing the amounts entered pursuant to (p) above.

5. Following a determination of the amount of refund due to each eligible customer in the manner above stated, Mr. Gregory shall, as conveniently and speedily as may be done, cause refund checks to be prepared, in one or more forms as he may elect, drawn upon the banks which are depositaries of the funds so held by the Clerk of this court in this case, for the amounts of the refunds to which the said customers are respectively entitled hereunder. The Clerk of this court shall thereupon issue or cause to be issued the said checks, bearing his signature or a facsimile thereof, payable to the order of the respective customers in the proper amounts as so determined, and Mr. Gregory shall mail or cause to be mailed or otherwise delivered to each customer the check payable to him. Each of the said banks shall honor all checks so drawn on it by paying the respective amounts thereof to or to the order of the person or persons named therein, and said banks shall upon making such payments be absolved and released from all liability and claims with respect to any and all amounts so paid by them, respectively, and shall be entitled to full credit therefor in any and all accountings to be made with respect to said funds. Mr. Gregory is hereby authorized to determine the depositary bank or banks upon which such checks shall be drawn at any time, and the Clerk of this court shall, at Mr. Gregory's direction, transfer funds from any one or more of such depositary banks to any other one or more of such banks to facilitate the refunding herein contemplated. Each such refund check not presented for payment within 60 days from the date thereof to the depositary bank upon which it is drawn shall, upon the expiration of said period, be null and void, and an inscription on the face thereof shall so state. Each such refund check shall be accompanied by a statement, either on an attached stub or otherwise, on behalf of this court, approved by and over the name of Mr. Gregory, explaining to the payee the occasion for the refund which it represents.

6. It shall be proper for Mr. Gregory, and he is hereby authorized, to employ the services of any one or more persons or agencies selected by him to facilitate the refunding herein contemplated, and to include the expense so incurred in his estimate of the cost of making the refund. Among the agencies which it shall be proper for Mr. Gregory so to employ are the utilities herein named, or any one or more of them, but no utility so employed shall receive any compensation for such service beyond reimbursement for actual reasonable costs and expenses incurred by it by reason of the performance of such service, such compensation to be fixed by this court.

7. The several utilities shall, upon order of this court, be reimbursed for all costs and expenses reasonably incurred by them in complying with the requirements of this decree or the requirements of Mr. Gregory hereunder. For such reimbursement and for payment of any other costs or expenses incurred under the authority of this decree (when approved by Mr. Gregory), checks in the proper amounts shall be drawn and signed by the Clerk of this court, at Mr. Gregory's direction, upon one or more of the said depositary banks, and shall be duly

delivered to the payees thereof by Mr. Gregory.

8. The utilities named herein, and each of them, shall cooperate with Mr. Gregory with all reasonable diligence in carrying out the purposes of this decree and shall comply with any and all reasonable requests he may make of them hereunder in connection with the carrying out of the purposes of this decree; but neither Mr. Gregory nor any utility shall be liable on account of errors of a bookkeeping or clerical nature, or for the consequences of any act or omission occurring in the course of his or its carrying out, while acting in good faith and with reasonable diligence, the directions contained in or authorized by this decree.

9. Mr. Gregory and the Clerk of this court shall be entitled to rely upon any and all written representations or statements made to them or either of them by the utilities or any of them or by said depositary banks or any of them, or by any of said banks or any other agency designated by Mr. Gregory as disbursing agent for any part of the refund involved herein, in connection with the carrying out of the requirements herein directed or authorized. Likewise, each of the depositary banks shall be entitled to rely upon any and all written representations or statements made to such bank by the utilities or any of them or by Mr. Gregory or by the Clerk or by any person or persons employed by Mr. Gregory or the Clerk in connection with the carrying out of the requirements herein directed or authorized.

10. Mr. Gregory shall, prior to the entry by this court of the further order referred to above in subparagraph (o) of Paragraph 4, make a report to this court, advising it of terms and conditions appropriate for inclusion in a further order of the court providing for steps to be taken and procedure to be followed in special situations which may be anticipated in connection with the making of the refunds, such as cases wherein the identity of the payee may be in doubt or in dispute, or the original payee may have died, or other situations, like or unlike the above, in which the making of the refund cannot necessarily be accomplished merely by delivery of a check to the specified payee as contemplated above.

11. Mr. Gregory shall from time to time, during the carrying out of the refund operations herein provided for, make such current reports to the court as the court may request, and, upon the completion of the work of distributing the refunds, shall make a report to the court, showing (1) such completion; (2) the general procedure followed by him in supervising the work and in reasonably assuring himself that the method of refund herein ordered has been properly and accurately carried out; (3) an itemized statement of the Clerk's charges and of all expenditures from the fund to cover costs and expenses of distribution; (4) the total amounts of the refunds (by groups of customers of the respective utilities involved); and (5) the balance remaining in the fund.

12. This court reserves and retains jurisdiction of this cause, the parties hereto, and the moneys deposited in the special funds in the said banks, depositaries hereunder, for the purpose of supervising and enforcing this decree and the payment of refunds herein ordered, and of making such other and further orders and decrees herein as may be necessary, suitable or appropriate to preserve, protect and settle the rights of the parties hereto and the rights of the several customers of said utility companies and of all persons having rights in said special funds; and nothing herein shall be deemed to preclude any party hereto from asking for the entry of additional or supplemental orders herein as above contemplated. The customers and former customers, and all persons claiming by, through or on behalf of any such customer, and all other persons, are hereby enjoined and restrained from taking any action or instituting, maintaining or carrying on any suits or proceedings at law, in equity, or otherwise, before any other tribunal, or in any other manner whatsoever, to obtain any such refunds, or any part thereof, in any manner except only such proceedings as they may take in this cause.

It is further ordered that the following named parties:

Natural Gas Pipeline Company of America, 20 No. Wacker Drive, Chicago, Illinois,

Texoma Natural Gas Company, 20 Wacker Drive, Chicago, Illinois,

Mr. George I. Haight, 209 So. La Salle Street, Chicago, Illinois,

Mr. Warren T. Spies, 20 No. Wacker Drive, Chicago, Illinois,

Mr. J. J. Hedrick, 20 No. Wacker Drive, Chicago, Illinois,

Mr. S. A. L. Morgan, 20 No. Wacker Drive, Chicago, Illinois,

The Iowa-Illinois Gas & Electric Company, (Merger of Iowa-City Gas Light & Power Co., Ottumwa Gas, Peoples Light Co., Peoples Power Co.), attention Mr. Thomas K. Humphrey, Room 2200, 105 W. Adams Street, Chicago, Illinois,

The Iowa-Nebraska Light & Power Co., 923 Sharp Bldg., Lincoln, Nebraska; Mr. George A. Lee, General Counsel, and L. R. King, Pres., Gas & Elec. Bldg., Lincoln, Nebraska,

The Illinois Commerce Commission, Mr. Albert E. Hallett, 208 S. La Salle Street,

Hon. George F. Barrett, The Attorney General of Illinois, Springfield, Illinois,

The Federal Power Commission, Washington, D. C., Attention Messrs. George Slaff, and Richard J. Connor, General Counsel,

The Central States Elec. Co., Cedar Rapids, Iowa, Attn. Mr. Frank A. Fratcher,

The City of Nebraska City, Nebraska City, Nebraska, Mr. John M. Dierks, City Attorney,

The Iowa-Power & Light Co., 312 Sixth Ave., Des Moines, Ia.,

Kewanee Public Service Co., Kewanee, Illinois,

Princeton Gas Service Co., Princeton, Illinois,

United Gas Service Co., Bartlesville, Oklahoma, attn. Lloyd A. Rowland, Union Nat. Bank Bldg., Bartlesville, Okla.,

Central Power Co. and Consumers Public Power District, Attn. William H. Pitzer, Building & Loan Bldg., Nebraska City, Nebraska,

Western United Gas & Elec. Co., 20 No. Wacker Drive, Chicago, Illinois,

Mr. Benjamin Alschuler, 32 Water Street, Aurora, Illinois,

Chicago District Pipeline, 122 So. Michigan, Chicago, Illinois,

Peoples Gas Light & Coke Co., 122 So. Michigan, Chicago, Illinois,

Mr. Kenneth F. Burgess, 11 So. La Salle Street, Chicago, Ill.,

Mr. Francis L. Dailey, 122 So. Michigan, Chicago, Illinois,

Public Service Company of Northern Illinois, 72 W. Adams St., Chicago, Illinois, Mr. Harry J. Dunbaugh, 72 W. Adams St., Chicago, Illinois,

Illinois Northern Utilities,

The Attorney General of Iowa, representative of the gas consumers of Iowa, Des Moines, Iowa,

The Attorney General of Nebraska, representative of the gas consumers of Nebraska,

The Attorney General of Oklahoma, representative of the gas consumers of Oklahoma,

The Attorney General of Indiana, representative of the gas consumers of Indiana, Indianapolis, Indiana,

The Northern Indiana Public Service Co.,

Mr. Marshall Joyce, A. J. Joyce, Oscar Claessens, Otto Millard, R. Lyon, R. A. Nelson, Mrs. Barbara Schmit, F. Glenn Shehee, John A. Quigley, S. O. Hansen, John C. Ide, S. Morcel, Jr., Jerome J. Novy, Leonard W. Wolfe, A. R. Ramser, G. J. Hermes, Dr. Arthur R. Weihe, Wilbur Millard, M. J. McDermott, Ernest A. Bederman, Benjamin Scheftel, Gardner E. Larson—represented by Attorneys Floyd Thompson, Anan Raymond, and Albert E. Jenner, Jr., 11 So. La Salle St., Chicago, Illinois,

Cedar Rapids Gas Co.,

and whomever else it may concern show cause if any they have, within twenty days after service of this decree, why this decree, as well as any other orders of this court entered in this matter respecting the distribution of the funds involved, and the costs and expenses of said distribution, should not be binding upon them.

The court requests the Illinois Commerce Commission and the Attorney General of Illinois to appear and represent all the customers and advise the court, if either finds any inequities in the plan of distribution set forth in this decree.