**NATURAL GAS PIPELINE CO. OF AMER-
ICA et al. v. FEDERAL POWER
COMMISSION et al.**

No. 7454.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1944.

John Ligtenberg, of Chicago, Ill., for D. A. O'Connor.

Wm. Creighton Wines, Asst. Atty. Gen., for Geo. F. Barrett, Atty. Gen., of State of Illinois.

Francis L. Daily, Homer D. Dines, Kenneth F. Burgess, and Douglas F. Smith, all of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

D. Alan O'Connor, a customer of the Peoples Gas Light and Coke Company (herein called Peoples Company), for himself and on behalf of all other such customers similarly situated, petitions this court to order respondent, Peoples Company, to refund a portion of its charges for gas from April 1, 1942 to February 5, 1943, measured by the reduction in the cost of natural gas it purchased from the Natural Gas Pipeline Company for that period.

The original suit herein arose by the petition of the Natural Gas Pipeline Company for review of an order of the Federal Power Commission, entered July 23, 1940, directing that Company to reduce its rates for natural gas. This court issued a stay order pending review, conditioned upon a bond filed to protect purchasers of gas under rates in excess of those prescribed by the Commission, and subsequently vacated the order, 120 F.2d 625, but the Supreme Court on March 16, 1942, reinstated the Commission's order, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037. Shortly thereafter and effective April 1, 1942, Natural Gas Pipeline Company filed reduced rates with the Federal Power Commission, and the accumulation of a fund by reason of this court's injunctive process ceased. The six million dollar fund, which had accumulated during the period from August 1, 1940 (the original effective date of the order of the Federal Power Commission) to March 31, 1942, and which was paid into this court by Natural Gas Pipeline Company in satisfaction of its obligation under the stay order, 128 F.2d 481, was on September 3, 1942, decreed to belong to the ultimate consumers of the several utilities to whom Natural Gas Pipeline Company furnished natural gas, 131 F.2d 137, and was distributed accordingly.

Petitioner asks for reparation from respondent, Peoples Company, to its customers for the period from April 1, 1942 to February 5, 1943, not in respect to any fund paid into this court by the Natural Gas Pipeline Company, but based upon rates which petitioner alleges would have been just and reasonable for Peoples Company to charge during that period. He seeks to measure the reasonableness of such rates, not only by the Commission's order of August 1, 1940, but also by an order for a further reduction in Natural Gas Company's wholesale rates effective August 31, 1942. This latest order was entered long after the Supreme Court's mandate was filed in this court.

Thus, in our view, the present petition is not based upon the ancillary jurisdiction of this court to determine the ownership and distribution of a fund accumulated as a result of the exercise of its injunctive power, but instead seeks to invoke an alleged rate-making power on the part of this court. As a basis for jurisdiction, petitioner relies upon a disclaimer filed by respondent in this court on June 6, 1942, following the court's action in assuming jurisdiction of the fund paid into this court by the Natural Gas Pipeline Company. This disclaimer renounced all interest in the specific fund in the possession of the court, and respondent filed its appearance in this cause on October 15, 1942, for the sole purpose of assisting the court in the distribution of that fund.

It is clear that O'Connor's petition must be dismissed because this court does not have jurisdiction to entertain it.

The jurisdiction which we are asked to exercise cannot be based upon any authority of the Federal Power Commission inasmuch as that Commission has no jurisdiction, and claims none, over the respondent or its rates, for the reason that that Commission has jurisdiction over certain sales for resale only, not over retail rates to the ultimate consumer. Louisiana Public Service Commission v. United Gas Pipe Line Company, 48 P.U.R., N.S., 91, 96. Nor can jurisdiction be established under the original suit, because the original suit was terminated upon the filing of the mandate of the Supreme Court in this court on April 18, 1942, and subsequent proceedings were merely to award the fund which had accumulated under this court's order to the proper parties. Even petitioner concedes this. But petitioner, relying upon implications which he alleges arise out of the opinions and orders of this court in the ancillary proceedings in connection with the distribution of the fund

which came into our possession under this court's stay order, requests the court, apparently under some strange extension of its ancillary powers as a court of equity, to create another fund out of money collected by Peoples Company after March 31, 1942 until February 5, 1943, under lawful rates prescribed by the Illinois Commerce Commission. Not only was Peoples Company not a party when the original suit began, but, more important, the money collected by Peoples Company has never been in dispute before this court and has never been in the possession or under the control of this court. The court has no lien upon such money, or any jurisdiction in respect thereto growing out of, or incidental to, the original suit herein or the proceeding ancillary thereto. The "fund" or "trust fund" which petitioner seeks to conjure up is entirely illusory.

■ Since Peoples Company is a public utility, it is subject to the jurisdiction of the Illinois Commerce Commission under the provisions of the Public Utilities Act, chap. 111⅔, Ill.Rev.Stat.1943, and it is that Commission which has the power to fix reasonable rates for its service. § 41 chap. 111⅔, Ill.Rev.Stat.1943; People v. City of Chicago, 349 Ill. 304, 346, 182 N.E. 419; Alton Water Co. v. Illinois Commerce Commission, D.C., 279 F. 869, 871.

The heart of petitioner's contention is that Peoples Company failed to reduce its retail rate pro tanto when a reduction in the wholesale rate charged by Natural Gas Pipeline Company was ordered. But this contention overlooks the fact that many other items of expense besides the price of natural gas entered into the Peoples Company's cost of operation, and in April, 1942, when the rates of Natural Gas Pipeline Company were reduced so that Peoples Company had to pay less for said gas, other costs were rising. Accordingly, shortly after wholesale natural gas rates -were reduced on April 1, 1942, Peoples Company filed with the Illinois Commerce Commission reduced retail rates by which it proposed to retain some of the saving due to the reduced cost of gas. Thus that Commission had the choice of taking immediate action to reduce retail gas rates in Chicago, by permitting the rates proposed by the Company to become presently effective, or to enter upon an inquiry as to what change, if any, should be made in consumer rates, by causing the rates filed by the Company to be suspended. The latter

alternative was adopted, and hearings were accordingly held through the year 1942. Copies of the transcript of the proceedings had and evidence introduced before the Illinois Commerce Commission in its investigation of the Peoples Company's costs of operation and rates have been submitted by respondent in support of its motion to dismiss. The exhibits in the record of those proceedings show that the Commission was fully advised as to the cost of natural gas purchased by respondent. Furthermore, the record shows that if there was delay in those proceedings, it was not Peoples Company which was responsible for it. Both the City of Chicago and the Attorney General of Illinois appeared at those hearings. In the course of the proceedings before the Commission, it appeared that as the year progressed the Peoples Company under war conditions was experiencing an increase in its gross revenue which, towards the end of the year, became sufficient to offset any additional costs which it was incurring. Hence the Commerce Commission, in December, 1942, entered an order directing a reduction in the Peoples Company's rates equal to all of the saving caused by the natural gas rate reduction except that part which related to the sale of gas for industrial use on an interruptible basis.

What petitioner now asks, is to have this court ascertain that there were excess collections from him and the amount thereof. But the only way that we could do this would be to usurp the functions of the Illinois Commerce Commission by fixing what we consider would have been a reasonable rate for the Peoples Company to charge during the period in question, and the specific class or classes of customers entitled to a refund by reason of the Company's charges in excess thereof. We refuse to do so because this court has no rate-making powers. Peoples Gas Light & Coke Co. v. Slattery, 373 Ill. 31, 48, 25 N.E.2d 482; Chicago, Milwaukee & St. Paul R. Co. v. State Utilities Commission, 268 Ill. 49, 57, 108 N.E. 729; Mills v. People's Gas Light & Coke Co., 327 Ill. 508, 536, 537, 158 N.E. 814. We think there is some confusion in petitioner's arguments and contentions, as to what the Illinois Commerce Commission has done. In our view, the Commission has declared that the rate charged by respondent shall be lower in the future. But it has not found that the respondent's rates were too high during the period in question, for the issue of the reasonableness of respondent's rates at that

time has never been presented to it in a reparation proceeding.

■ Since when a commission, either state or federal, merely holds that a utility rate is unreasonably high and establishes a lower one for the future, a customer who has paid the higher rate does not thereby become entitled to recover in the courts the difference between the two rates for some past period without first applying to the commission, Graham Ice Co. v. Chicago, Milwaukee & St. Paul R. Co., 153 Wis. 145, 140 N.W. 1097; Jeanneret v. Chicago, B. & Q. R. Co., 7 Cir., 17 F.2d 978, petitioner, if he considers himself aggrieved, should attempt to obtain a reparation order from the Illinois Commerce Commission in a proceeding duly instituted for that purpose. This is clearly the procedure prescribed by the Illinois Public Utilities Act, § 76, chap. 111⅔, Ill.Rev.Stat. 1943. That Act gives the Illinois Commerce Commission jurisdiction to hear claims against a public utility based upon overcharges and to enter orders that the utility make due reparation for an overcharge, and it is only if the utility does not comply with the Commission's order granting reparation that the claimant may petition a court for enforcement of the order of reparation. Texas Co. v. Chicago & Alton R. Co., 7 Cir., 117 F.2d 210. Here, no order of the Commission was ever violated because the matter was not even submitted to that tribunal. Thus there was a plain failure to recognize that the Illinois Commerce Commission has exclusive jurisdiction over actions in which reparation is sought for allegedly excessive rates, Medusa Portland Cement Co. v. Illinois Cent. R. Co., 287 Ill.App. 549, 5 N.E.2d 782, and that the intent of the legislature was to require an application therefor to be first made to the Commission, thus precluding court action for such reparation until the Commission heard the claim and entered an order. Terminal R. Association v. Public Utilities Commission, 304 Ill. 312, 317, 136 N.E. 797. With reference to provisions in the Interstate Commerce Act which are substantially similar to the Illinois Public Utilities Act, the United States Supreme Court has taken the same view. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 444, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Robinson v. Baltimore & Ohio R. Co., 222 U.S. 506, 508–510, 32 S.Ct. 114, 56 L.Ed. 288; Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U.S. 654, 661. And Illinois courts have regarded this interpretation as persuasive. Terminal R. Association v. Public Utilities Commission, supra; Des Plaines Lumber & Coal Co. v. Chicago Burlington & Quincy R. R. Co., 249 Ill.App. 383. Since only the Commission has authority in respect to reparations and since in respect to these particular collections by the Peoples Company under published rates no consumer has at any time filed a claim for reparations, it is clear that we have no jurisdiction.

■ As to petitioner's contention that we expressly reserved jurisdiction by our former order, 131 F.2d 137, 143, we think it is clear that, taken in its context, the order referred to any and all questions which might arise or further proceedings which might be necessary in connection with the fund on deposit with this court. The order refers to "* * * this cause * * *," i. e., the action by the Federal Power Commission against the Natural Gas Pipeline Company, which is a cause of action distinctly different from the instant cause, i. e., O'Connor against the Peoples Gas Light & Coke Company. In our previous order we were dealing with the rights of customers of the public utility companies and other persons in said special funds, i. e., the funds which had accumulated in this court by virtue of our injunctive order. Customers were restrained from taking action in any other tribunal with respect to refunds of money out of the fund then on deposit in our court. We were not referring to alleged rights to refunds which might arise subsequently, but just to "* * * the refunds herein ordered * * *," i. e., the refunds contemplated by the decree entered at that time (September 3, 1942). That fund has now been distributed. True, we retained jurisdiction over ancillary proceedings, but the instant case is essentially different, and petitioner's attempt to classify it as an ancillary proceeding is unsound. Further, what we meant when we decreed that additional and supplemental orders could be brought in this court was, that additional or supplemental orders relating to the fund on deposit in this court should be sought here rather than in another tribunal which would not be familiar with the facts. But we had no intention of enlarging our jurisdiction by encroaching on the domain of the Illinois Commerce Commission, and since petitioner's action is essentially one for reparation, it clearly falls within the Commission's domain. Thus, while we do not think there

is any inconsistency between our former order and the action we are taking in regard to O'Connor's petition, insofar as there is any such inconsistency, we wish to clarify our former order by narrowing it as hereinabove construed.

 Because we believe we have no jurisdiction, it is not necessary to discuss in detail the arguments offered by the other petitioner, the Attorney General of the State of Illinois. Briefly, his first proposition is that this court's jurisdiction in the present case is original rather than appellate, and is the plenary jurisdiction of a court of equity. The authorities[1] cited do not present a germane and persuasive analogy to our case. They treat situations where the administrative body claimed jurisdiction over the parties and cause of action, whereas here, the Federal Power Commission claims no jurisdiction over respondent and does not seek to enforce any order against it. Instead of being a statutory suit for review of its order or a modification thereof, this proceeding is between parties different from the original parties and presents substantially different issues. To his second proposition, namely, that this court has plenary jurisdiction to carry out the decision of the Supreme Court of the United States herein by effecting a complete refund to consumers, we reply that in our opinion we have fully carried out the directions of that Court by distributing the fund deposited by the Natural Gas Pipeline Company to the ultimate consumers. In so doing we have acted in complete harmony with the authorities[2] cited by petitioner, which are in the main illustrations of the rule permitting third persons to come into suits in federal courts to enforce their claims in respect of property there impounded. Since the impounded fund has now been distributed so that there is no longer any fund in the control or possession of the court, there is nothing on which to base jurisdiction.

The petitions are hereby dismissed.

[1] L. B. Silver Co. v. Federal Trade Commission, 6 Cir., 292 F. 752, 753; Butterick Co. v. Federal Trade Commission, 2 Cir., 4 F.2d 910, 913; Chamber of Commerce of Minneapolis v. Federal Trade Commission, 8 Cir., 13 F.2d 673, 683; Federal Trade Commission v. Balme, 2 Cir., 23 F.2d 615, 618; Indiana Quartered Oak Co. v. Federal Trade Commission, 2 Cir., 58 F.2d 182, 184; Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221.

[2] United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 83 L.Ed. 1211; Inland Steel Co. v. United States, 306 U.S. 153, 158, 59 S.Ct. 415, 83 L.Ed. 557; Central Union Trust Company of New York v. Anderson County, Texas, 268 U.S. 93, 96, 45 S.Ct. 427, 69 L.Ed. 862; Hoffman v. McClelland, 264 U.S. 552, 558, 44 S.Ct. 407, 68 L.Ed. 845; Ex parte Lincoln Gas & Electric Light Co., 256 U.S. 512, 516–518, 41 S.Ct. 558, 65 L.Ed. 1066; Labette County Commissioners v. Moulton, 112 U.S. 217, 221, 5 S.Ct. 108, 28 L.Ed. 698.