Medusa Portland Cement Company, Appellant, v. Illinois Central Railroad Company, Appellee.

**Gen. No. 38,617.**

Opinion filed December 30, 1936.

ROBERT E. QUIRK, CLARENCE B. CARDY and JAMES F. WRIGHT, of Chicago, for appellant.

HERBERT J. DEANY and ELMER A. SMITH, both of Chicago, for appellee; EDWARD C. CRAIG and VERNON W. FOSTER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this appeal plaintiff, Medusa Portland Cement Company (successor in interest to Sandusky Cement Company) seeks to reverse a judgment rendered against it in favor of defendant, Illinois Central Railroad Company, in plaintiff's common law action in assumpsit against the latter for $22,917.60 damages, alleged to be due by reason of unjust, unreasonable, excessive and discriminatory rates charged and exacted by defendant from plaintiff for the transportation of bituminous coal in carload lots from mines in the Springfield and Southern Illinois districts to the cement company's plant at Dixon, Illinois, during the period from April 4, 1922, to and including Febru-

ary 29, 1928. The case was tried by the court without a jury and no question arises on the pleadings.

April 4, 1924, plaintiff's predecessor in interest, the Sandusky Cement Company, filed a complaint with the Illinois Commerce Commission (hereinafter for convenience referred to as the commission) alleging that it operated a plant at Dixon, Illinois, and that the rates charged and collected by the defendant for the transportation of bituminous coal from the Springfield and Southern Illinois groups of mines to Dixon, Illinois, had been for two years prior to the filing of the complaint, were then and for the future would be unjust, unreasonable, excessive and discriminatory in violation of the Illinois Public Utilities Act, Ill. State Bar Stats. 1935, ch. 111a; Jones Ill. Stats. Ann. 112.001 *et seq.* The complaint prayed that the commission order the defendant to desist from violating the act, to establish and apply in the future reasonable and just rates to the transportation of bituminous coal between the said points and "to pay to the plaintiff herein by way of reparation for the unreasonable charges hereinbefore alleged, such sum as in view of the evidence to be adduced therein, the said commission should determine that the plaintiff herein was entitled to as an award of damages under the provisions of said act for violations thereof."

Following several hearings on the complaint the commission entered an order October 30, 1929, finding that the rates assailed in the complaint "have been since April 4, 1922, are now and for the future will be unjust, unreasonable, excessive and unjustly discriminatory to the extent that they exceeded prior to July 1, 1922, 211 cents from the Southern Illinois group of mines and 178 cents from the Springfield group of mines, and to the extent that they exceeded or exceed from and after July 1, 1922, 190 cents from the Southern Ill. Group of Mines and 160 cents from

the Springfield Group of mines." The order required the railroad company "to put in force within forty-five days of the date of this order" and to apply in the future "rates in accord with the findings of the commission expressed herein" and found that plaintiff "paid and ultimately bore the freight charges" and has been damaged thereby. The order also found that plaintiff is entitled to an award of reparation "for the charges collected in excess of the charges which would have been collected had the said charges been predicated on the rates herein found to be just and reasonable" and provided that plaintiff prepare and file with defendant detailed statements showing the amount of reparation due, the defendant being directed "to certify to the correctness of the statements of the amounts of reparation due" and "to file the said statements with the commission within ninety days of the receipt of said statements." The commission reserved jurisdiction of the subject matter and of the parties "for the purpose of entering orders awarding reparation for the charges collected in excess of the charges which would have been collected had said charges been predicated on the rates herein found to be just and reasonable, nonexcessive and free from unjust discrimination."

November 18, 1929, which was within the time allowed by statute, the defendant filed with the commission a petition for a rehearing, the prayer of which is as follows: "Wherefore, these defendants respectfully ask this Honorable Commission to grant a rehearing in this cause, to postpone the effective date of the order herein, and to give them, after the rehearing has been concluded, an opportunity to argue this cause orally." (There were other parties plaintiff and defendant in the proceeding before the commission.)

The minutes of the commission show that on December 3, 1929, the petition for a rehearing was granted

and December 6, 1929, the parties to the proceeding were advised by letter from its secretary "that the Illinois Commerce Commission on the 3rd day of December, 1929, granted the petition on behalf of defendants for rehearing, postponement of effective date of order and oral argument."

On May 6, 1930, after the rehearing was concluded the commission entered a second order in which it found "that the rates herein assailed for the intrastate transportation of bituminous coal in carloads to Dixon, Illinois, have been since February 29, 1928, are now and for the future will be unjustly discriminatory to the extent they exceeded or exceed 190 cents from the Southern Illinois group and 160 cents from the Springfield group." This order directed defendant to publish, post and file with the commission within 45 days from its date a schedule of rates consistent with the finding therein and provided that plaintiff prepare and file with defendant statements of the amount of reparation due under such finding, which the defendant was directed to certify and file with the commission within ninety days of their receipt from plaintiff. Plaintiff filed its reparation statements under the order of May 6, 1930, and following their certification by the defendant, the commission entered an order November 13, 1930, directing defendant to pay plaintiff $7,414.02 as reparation on account of unreasonable rates charged for transportation of coal from the aforementioned points to Dixon, Illinois, during the period from February 29, 1928, to and including May 21, 1930. Plaintiff accepted this reparation under the order of May 6, 1930.

The instant action was tried by the circuit court upon a stipulation of facts, only the following portions of which it is deemed necessary to set forth:

"1. That if and in the event it is finally determined and found that the defendant, Illinois Central Railroad

Company, is liable for damages in accordance with the findings in the order of October 30, 1929, of the Illinois Commerce Commission in the case known as Sandusky Cement Company, et al., v. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, Docket No. 14009, the amount of damages payable to the plaintiff by the said defendant, Illinois Central Railroad Company, in such event is $22,917.60, this amount, however, not including such interest as plaintiff may be entitled to under the statute, and such attorney's fees as plaintiff may be entitled to under the statute.

"2. That following the issuance of the order of the Illinois Commerce Commission of October 30, 1929, said order was duly served upon all parties to the case known as Docket No. 14009, Sandusky Cement Company, et al., vs. Illinois Central Railroad Company, et al., including the plaintiff and defendant herein.

"3. Following the entry of the order of the Illinois Commerce Commission of October 30, 1929, in the case known as Docket No. 14009, Sandusky Cement Company, et al., vs. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, the plaintiff herein, the Medusa Portland Cement Company (formerly the Sandusky Cement Company) did not file with said Illinois Central Railroad Company statements showing the amount of reparation due plaintiff herein, nor did said Illinois Central Railroad Company certify to the correctness of the statements of the amounts of reparation due the plaintiff herein, under the findings of the Illinois Commerce Commission made in said order; and that neither the defendant, Illinois Central Railroad Company, nor the said plaintiff, the Medusa Portland Cement Company, took an appeal to the courts from said order of October 30, 1929.

"4. That the said defendant, Illinois Central Railroad Company, filed on November 18, 1929, with the

Illinois Commerce Commission, in the cause before the Commission, known as Docket No. 14009, Sandusky Cement Company, et al., v. Illinois Central Railroad Company, et al., a petition for rehearing and postponement of the effective date of the order therein.

"5. That at the further hearing held before the Illinois Commerce Commission, on February 10, 11 and 13, 1930, in the case known as Sandusky Cement Company, et al., vs. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, Docket No. 14009, counsel for the plaintiff herein, the Medusa Portland Cement Company (formerly the Sandusky Cement Company) participated in the hearing without objection to it, cross-examining witnesses for the defendant, Illinois Central Railroad Company, examining in chief witnesses for the said Medusa Portland Cement Company (formerly Sandusky Cement Company), and briefing and arguing the case.

"6. That the plaintiff herein, the said Medusa Portland Cement Company, following the receipt from the said Illinois Commerce Commission of its order dated May 6, 1930, in the case known as Sandusky Cement Company, et al., v. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, Docket No. 14009, filed with the said Illinois Central Railroad Company, statements in compliance with the findings of the said Illinois Commerce Commission in its said order, showing the amount of reparation due the plaintiff herein, the said Medusa Portland Cement Company, under the findings of the said Illinois Commerce Commission expressed in the said order, and that the said Medusa Portland Cement Company accepted from the defendant herein, the said Illinois Central Railroad Company, the sum of $7,414.02 as reparation in accordance with the order of the said Illinois Commerce Commission, dated November 13, 1930, the first supplemental order to the said order of May 6, 1930, in the case known as Sandusky Cement

Company, et al., v. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, Docket No. 14009.

"7. That neither the said defendant nor the Medusa Portland Cement Company (formerly the Sandusky Cement Company), the plaintiff herein, took an appeal to the courts from the said order dated May 6, 1930, of the said Illinois Commerce Commission in the case known as Sandusky Cement Company, et al. v. Illinois Central Railroad Company, et al., before the Illinois Commerce Commission, Docket No. 14009."

In addition to the stipulation of facts, plaintiff offered in evidence the orders of the commission heretofore referred to and some others not material to the issues here presented, as well as a certificate from the secretary of the commission that said orders were all of the orders entered by the commission in the case of *Sandusky Cement Co. v. Illinois Central Railroad Co.,* docket No. 14009. Plaintiff also offered in evidence a copy of the minutes of the commission of December 3, 1929, pertaining to the allowance of defendant's petition for rehearing. Defendant introduced the following certificate in evidence:

"I further certify that the following is a true and correct copy of an entry in the Commission's record docket in Case No. 14009:

" 'December 3, 1929. At conference of Commission petition for rehearing filed on behalf of defendants, postponement of effective date of order and oral argument, was granted by Commission.

"December 6, 1929. All parties interested in case advised by letter.'

"Given under my hand and the seal of said Illinois Commerce Commission at Springfield, Illinois, this 21st day of March, A. D. 1932.

"Julius Johnson,<br>"Secretary."

For a proper understanding of the issues presented, it will be necessary to refer to and consider the following sections of the Illinois Public Utilities Act (Ill. State Bar Stats. 1935, ch. 111a; Jones Ill. Stats. Ann. 112.098, 112.099):

"Par. 91, sec. 72.  When complaint has been made to the commission concerning any rate or other charge of any public utility and the commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

"If the public utility does not comply with an order of the commission for the payment of money within the time fixed in such order, the complainant, or any person for whose benefit such order was made, may file in any court of competent jurisdiction a petition setting forth briefly the causes for which he claims damages and the order of the commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the order of the commission shall be *prima facie* evidence of the facts therein stated.  If the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the action.

"All complaints for the recovery of damages shall be filed with the commission . . . and a petition for the enforcement of an order of the commission for the payment of money shall be filed in the proper court within one year from the date of the order.

"The remedy provided in this section shall be cumulative, and in addition to any other remedy or remedies in this Act provided in case of failure of a public

utility to obey a rule, regulation, order or decision of the commission.

" . . .

"Par. 92, sec. 73. In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation.

"In every case of a recovery of damages by any person or corporation under the provision of this section, the plaintiff shall be entitled to a reasonable counsel's or attorney's fee to be fixed by the court, which fee shall be taxed and collected as part of the costs in the case."

Plaintiff's theory is that notwithstanding it filed its complaint before the commission under sec. 72 of the Utilities Act, for a finding that the transportation rates charged by defendant and paid by plaintiff as alleged and for the period alleged had been, were then and for the future would be unreasonable and unjustly discriminatory and for an order of reparation, the commission having found under said sec. 72 that plaintiff paid and bore excessive charges and was damaged thereby to the extent of the charges collected in excess of those which should have been collected had such charges been predicated upon rates found just, rea-

sonable, not excessive and not discriminatory, it was entitled under sec. 73, *supra,* to bring a common law action in any court of competent jurisdiction to recover damages sustained by it by reason of the violation by defendant of its statutory duty and that its action was properly brought under said section 73 to compel the repayment of the unlawful excess charges collected by defendant together with interest and attorney fees; that the rehearing of the order of October 30, 1929, upon defendant's petition of November 18, 1929, was granted December 3, 1929, without "issuance of an order as required by statute"; that its acceptance of reparation from defendant under the order of May 6, 1930, and orders supplemental thereto, "did not purport to constitute and did not constitute payment by defendant of the full amount which plaintiff claimed to be due and only covered overcharges accruing subsequent to February 29, 1928"; that the order entered by the commission May 6, 1930, did not "in terms or otherwise annul, rescind or set aside the order of the commission of October 30, 1929," but the last mentioned order remained in full force and effect in so far as the unlawfulness of the rates paid by plaintiff was concerned; that the order of the commission of May 6, 1930, did not, as contemplated by secs. 65 and 67 of the Utilities Act, rescind, annul or set aside the order of October 30, 1929, and that the latter is in full force and effect and its findings binding upon the parties as to the excess rates paid by plaintiff to defendant from April 4, 1922, to February 29, 1928, the order of May 6, 1930, directing the payment of reparation to plaintiff only for the period subsequent to the latter date; and that it "has the right to maintain this action under the provisions of sec. 73 of the Public Utilities act because in its decision and order of October 30, 1929, the Commission found that the rates paid by plaintiff from and after April 4,

1922, were, when paid, unjust, unreasonable and excessive, and because the commission did not subsequently make any decision or enter any order to annul, set aside or abrogate the findings made by the commission in its order of October 30, 1929.''

Plaintiff contends that the judgment of the trial court is contrary to law in that it is based upon the erroneous theory that sec. 72 of the Public Utilities Act is applicable to this action rather than sec. 73 thereof; that the court erred in holding that the rehearing granted by the commission December 3, 1929, upon petition of the defendant, without findings and order as required by secs. 65 and 67 of the Public Utilities Act, Ill. State Bar Stats. 1935, ch. 111a, ¶¶ 84, 86; Jones Ill. Stats. Ann. 112.090, 112.092, was equivalent to a new trial in a court of law and had the effect of nullifying the order entered by the commission on October 30, 1929; that the order of October 30, 1929, continued in full force and effect since the commission, by its action of December 3, 1929, granting the rehearing or by any subsequent action or order, did not rescind or abrogate said order as required by secs. 65 and 67 of the Utilities Act; and that the court erred in holding that this suit is a collateral attack on the order entered by the commission May 6, 1930.

Defendant's theory as set forth in its brief is as follows: ''First: The case before the Illinois Commission was essentially one under section 72 of the Illinois Commerce Commission Law (par. 91, chap. 111a, Ill. State Bar Stats. 1935) for reparation because of the exaction by the public utility of excessive and unjustly discriminatory rates. The plaintiff's petition seeks in substance and effect an enforcement of an order of the Illinois Commission for the payment of money. This petition was not filed in court within one year from the date of the order, and this suit is therefore barred by the one year statute of limitation contained

in the third paragraph of section 72. Second: The Illinois Commission granted the defendant's petition for rehearing, for postponement of the effective date of the order, and oral argument, following the entry of the Commission's first order of October 30, 1929, in this case. The whole case was reopened, and came up for consideration as though no order had ever been entered. The Commission's order of October 30, 1929, the finding in which order constitutes the basis for this suit was therefore superseded by the second order of May 6, 1930, entered by the Commission following the rehearing and reconsideration. Third: This case is in substance and effect, a collateral attack upon an order of the Illinois Commission, from which no appeal was taken by the plaintiff. Such a suit is forbidden by the very terms of the law itself. (Section 68 of the Illinois Commerce Commission Law, par. 87, chap. 111a, Ill. State Bar Stats. 1935.)''

Since the enactment of the Public Utilities Act, sec. 72 thereof has provided the only method or remedy available in this State for determining whether rates charged by public utilities are fair and reasonable or unfair, unreasonable and discriminatory. This section of the act also authorizes the commission to award reparation to claimants if rates charged and exacted of them are determined to have been excessive and discriminatory. In its complaint to the commission plaintiff admittedly proceeded under sec. 72 to secure an award of reparation, as well as a determination of the excessiveness of the rates charged. The order of October 30, 1929, after finding that the rates charged plaintiff and collected by the railroad were excessive and that plaintiff was entitled to reparation, provided for an award of reparation, directed the preparation and filing of the necessary statements requisite to such award and reserved jurisdiction to order the actual award.

The allowance of the rehearing intervened and precluded the filing of the reparation statements and the actual award of reparation under the order of October 30, 1929. But plaintiff claims that, regardless of the allowance of the rehearing of the order of October 30, 1929, which prevented compliance with the terms of that order for reparation, and, regardless of the order of May 6, 1930, he may now predicate this common law action for damages on the finding contained in the order of October 30, 1929, that the rates charged and paid over a period of years were excessive and discriminatory.

In *Terminal Railroad Ass'n v. Public Utilities Commission,* 304 Ill. 312, in considering the first paragraph of sec. 72, the court said at p. 317:

"The evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such reparation until the commission has heard a claim therefor. This is the view taken by the Supreme Court of the United States with reference to similar provisions in the Interstate Commerce act. (*Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426.) The similarity between the Interstate Commerce act and our Public Utilities act makes the decisions of the Supreme Court of the United States persuasive as to the correct rule to be adopted in this State. (*Public Utilities Comm. v. Terminal Railroad Ass'n, supra.*) Moreover, it cannot be doubted that the Public Utilities act supersedes the common law liability of the carrier so far as rates and unreasonable discrimination are concerned."

In *State Public Utilities Commission v. Chicago & West Towns Ry. Co.,* 275 Ill. 555, referring to sec. 72 of the act, the court said at p. 567:

"The statute thus affords a remedy against the continuation of excessive or unjustly discriminatory

rates by establishing just and reasonable ones through the commission and at the same time empowers it to compel reparation for overcharges.''

It is manifest from these decisions, and they but follow the decisions of the United States Supreme Court construing similar provisions of the Interstate Commerce Act, that no suit may be maintained in any court in Illinois to recover reparation for excessive or unjustly discriminatory rates unless and until the commission, acting under the authority conferred upon it by sec. 72, has heard a claim therefor, has found the rates the public utility charged to have been excessive or unjustly discriminatory, and has entered an order requiring the public utility to make due reparation. The public utility has no right even to appeal to the courts from an order of the commission awarding reparation, but in case such an award is made and the utility fails to comply with it, the claimant may petition the court to compel compliance by the utility. It is only in such case that the utility is afforded a review by the court of the commission's order, both as to its alleged unreasonable discrimination and the award of reparation.

Plaintiff concedes that the Utilities Act makes the determination by the commission of the unreasonableness of the rates assailed a condition precedent to any claim against a public utility by reason of excessive rates charged, because under said act the commission has exclusive primary jurisdiction over that question. It is only under sec. 72 of the act that the commission is authorized to make such determination. In addition sec. 72 not only provides for the filing of a complaint with the commission for reparation, hearing upon that complaint and award of reparation, but, as heretofore stated, authorizes a suit in court by the claimant upon the commission's order awarding reparation in cases where the public utility fails or refuses to comply with such order. As authorization for its

institution of the case at bar, plaintiff relies upon sec. 32 of the act, which is merely a restatement of the common law rule which declares unlawful every unjust and unreasonable charge demanded or received by a public utility for a service rendered or to be rendered, and upon sec. 72, under which plaintiff's complaint was filed with the commission and in response to which it was found in the order of October 30, 1929, that the rates charged were excessive, as well as upon sec. 73, which provides for a right of action in any court of competent jurisdiction for violations generally of the act by any public utility.

Sec. 72 is complete in and of itself. It was unnecessary for plaintiff to resort to any other section of the act for his procedure or for his remedy. It provides for the procedure to be followed both before the commission and the courts in respect to complaints for reparation. In our opinion, the Public Utilities Act does not contemplate that in a claim for reparation for excessive rates charged by public utilities, a plaintiff may piece together his rights from various sections of the statute when sec. 72 of the act alone deals completely and specifically with reparation claims. The rule is that where there is to be found in a statute a particular enactment, it is to be held operative as against general provisions on the subject, either in the same act or in the general laws relative thereto. (*Robbins v. Lincoln Park Com'rs,* 332 Ill. 571; *Handtoffski v. Chicago Consol. Traction Co.,* 274 Ill. 282; *City of Chicago v. M. & M. Hotel Co.,* 248 Ill. 264; *City of Cairo v. Bross,* 101 Ill. 475.)

Plaintiff's claim, both before the commission and in this action, was and is for the payment of money as reparation on account of excessive and unjustly discriminatory rates which it contends the defendant charged for its service and no amount of specious reasoning or argument can change the essential nature of

its claim. It clearly comes not only within the purview but within the plain terms of sec. 72 of the act. Plaintiff insists that the provision in the last paragraph of sec. 72 that "the remedy provided in this section shall be cumulative, and in addition to any other remedy or remedies in this act provided in case of failure of a public utility to obey a rule, regulation, order or decision of the Commission," gives it the right to bring this action under sec. 73 of the act. This position is untenable. Since sec. 72 affords a specific and complete remedy where excessive rates are imposed by utility companies, any other purported remedy under the act claimed to afford similar relief could serve only to add confusion to its operation. The right of action provided by sec. 73 and contemplated thereunder must, we are certain, refer to claims for damages arising out of violation of the act or the failure or refusal of public utilities to comply with orders of the commission other than orders requiring a public utility to make reparation for excessive or discriminatory rates charged for their service. We are impelled to hold that the right of action provided in sec. 73 of the act is inapplicable and irrelevant to plaintiff's claim and that plaintiff is confined to sec. 72 both as to procedure and the relief sought.

The conclusion reached by the Supreme Court in *Terminal Railroad Ass'n v. Public Utilities Commission, supra,* "that the Public Utilities act supersedes the common-law liability of the carrier so far as rates and unreasonable discrimination are concerned" effectually disposes of plaintiff's contention that it has the right to maintain this original common law action.

Inasmuch as the law is settled in this State since the enactment of the Public Utilities Act that a common law action will not originally lie at any time or under any circumstances for reparation on account of excessive rates charged by a public utility, plaintiff had

absolutely no right to institute this action. It is, there-fore, unnecessary to discuss the other points urged for reversal. However, if it be assumed but not held that plaintiff is correct in its contention that the order of May 6, 1930, did not have the effect of rescinding the order of October 30, 1929, as to the excessiveness of the rates exacted by defendant from plaintiff prior to February 29, 1928, plaintiff's proper and only pro-cedure was to have filed its reparation statements un-der the order of October 30, 1929, as provided therein for the period prior to February 29, 1928. Plaintiff accepted the reparation directed to be paid by defend-ant under the order of May 6, 1930. It could have appealed to the court if it deemed that order improper or erroneous. After the entry of the order of May 6, 1930, plaintiff made no attempt whatsoever to assert any claim under the order of October 30, 1929, which it now claims continued in force and effect as to repara-tion due it for the period prior to February 29, 1928. It is reasonable to infer that after the order of May 6, 1930, was entered by the commission, plaintiff con-sidered that order the final order and the only effective order in the proceeding. In our opinion the instant common law action instituted by plaintiff January 29, 1932, was purely an afterthought.

For the reasons stated herein the judgment of the circuit court should be and it is affirmed.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.