**TILNEY et al. v. CITY OF CHICAGO, ILL., et al.**

No. 8013.

Circuit Court of Appeals, Seventh Circuit.

April 16, 1943.

Rehearing Denied May 14, 1943.

Weightstill Woods, of Chicago, Ill., for appellant.

Barnet Hodes, Joseph F. Grossman, and J. Herzl Segal, all of Chicago, Ill., for appellee.

Before EVANS, MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiffs seek to reverse a judgment dismissing their suit. They are nonresidents of the state of Illinois and sue as members of a class, that is, patrons of the passenger transportation system of the city of Chicago, praying that the city and its executive officers account for and pay into the court for distribution to plaintiffs and others similarly situated the "traction fund" created by and emanating from the provisions of the municipal ordinances of 1907; that the city be enjoined from diverting the fund, and that the court, after ascertaining its true amount, marshal and, by final decree, settle and dispose of it.

Under the ordinances, the traction companies were directed to pay to the city, 55 per cent of their net receipts each year. The fund thus accumulated constitutes compensation for the use of the city's streets by the traction companies. Venner v. Chicago City Ry. Co., 236 Ill. 349, 86 N.E. 266; Chicago Rys. Co. v. Illinois Commerce Commission, D.C., 277 F. 970; Harris Trust Savings Bank v. Chicago Rys. Co., D.C., 39 F.2d 958. It was ordered deposited to the credit of the city as "a separate fund to be kept and used for the purchase and construction of street railways by" the municipality. Thus the accumulated fund is held in trust

to be expended for a specific purpose defined by the Supreme Court of Illinois as including elevated, surface and underground railways, Barsaloux v. Chicago, 245 Ill. 598, 92 N.E. 525, 19 Ann.Cas. 255, and all preliminary and incidental work necessitated by or involved in such purchase and construction. People v. Chicago, 349 Ill. 304, 182 N.E. 419.

Plaintiffs insist that the District Court improperly held that they have no voice in the disposition of the fund. They insist that the trust estate has been created by the fares paid by them and millions of other travelers on the street cars of Chicago and that they are beneficiaries of the trust entitled to be heard in a court of equity's disposal and settlement thereof, or, that contention failing, that they are third parties for whose benefit the municipal contracts were made, consequently endowed with the right to sue thereon and, that, on either alternative, the court should take jurisdiction of the fund, determine its true amount and distribute it.

The fares paid by plaintiffs were fixed by the Commerce Commission of Illinois. Chicago Rys. Co. v. Chicago, 292 Ill. 190, 126 N.E. 585. If the amount of such fares is excessive; if, for any reason known to the law, they are improper, the one forum in which complaint can properly be heard, is the state commission, subject to the provided statutory review by the Illinois courts. When plaintiffs paid their fares, therefore, they forever parted with their money; title to it, once and for all, passed from them to the traction companies. Thereafter, plaintiffs had no voice as to its disposition, no right of control of its expenditure. When paid to the city the 55 per cent of the profits was the money of the traction companies; after such payment it became that of the city. To extend to plaintiffs the right to be heard as to its ultimate disposition, would be to vacate and supersede, in a collateral proceedings, the adjudication of the Commerce Commission that the fares paid are reasonable and proper and to grant, in a proceedings to which that commission is not a party, a rebate from such legal fares. A court of equity can not lend its aid to such an anomalous proceeding. The only injury of which plaintiffs may complain in a judicial tribunal is the invasion of some legal or equitable right. Clearly the state has a legal interest in preventing perversion of the ordinances, but the answer to plaintiffs' private suit is that a violation of the ordinances by the city does not injuriously affect any of their rights as car riders who have paid the legal fares. The city is not shown to owe them any duty which it has not performed.

Nor are plaintiffs in any improved position, when they contend that they may sue as beneficiaries of contracts made for their direct benefit. An incidental benefit arising to a third party from a contract is not sufficient. There must be a clear liability of the promisor directly to the third person. Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 178 N.E. 498, 81 A.L.R. 1262; In re A. C. Becken Co., 7 Cir., 75 F.2d 681; Root v. Saratoga Springs, 218 App. Div. 237, 218 N.Y.S. 204; Styles v. F. R. Long Co., 70 N.J.L. 301, 57 A. 448. In the present case not even an incidental benefit exists for plaintiffs. They have no interest whatsoever. Rather the fund is to be kept by the city and expended by it for a proper public purpose. Patrons who have paid the legal fares have not by virtue of that fact and it alone, any enforcible legal right or beneficial interest in the contract, the resulting profits or the public fund created therefrom.

The judgment is affirmed.