COMMONWEALTH EDISON COMPANY
et al., Plaintiffs,

v.

ALLIS-CHALMERS MANUFACTURING
COMPANY et al., Defendants,
and related cases.

CENTRAL ILLINOIS LIGHT COMPANY
et al., Plaintiffs,

v.

ALLIS-CHALMERS MANUFACTURING
COMPANY et al., Defendants,
and related cases.

Civ. A. Nos. 61 C 1277 to 1285,
1688 to 1696.

United States District Court
N. D. Illinois, E. D.

May 17, 1962.

Charles A. Bane, Robert W. Bergstrom, Seymour F. Simon, Thomas C. McConnell, Lee A. Freeman, William J. Froelich, Chicago, Ill., Van B. Wake, Milwaukee, Wis., Daniel P. Ward, State's Atty. of Cook County, Ill., Barnabas F. Sears, James O. Smith, Chicago, Ill., for plaintiffs.

John T. Chadwell, Hammond E. Chaffetz, Holmes Baldridge, Edward R. Johnston, W. Donald McSweeney, John Paul Stevens, Earl E. Pollock, Robert C. Keck, Roland D. Whitman, Timothy G. Lowry, Harold T. Halfpenny, Lloyd M. McBride, Neil McKay, Jacob H. Martin, Edward R. Adams, Brainerd Chapman, Chicago, Ill., for defendants.

ROBSON, District Judge.

These 18 actions filed by several electric public utilities seek treble damages under federal antitrust laws. The separately grouped defendants are charged with conspiratorial price fixing resulting in the establishment of higher non-

competitive prices in the sale of electrical equipment to the plaintiffs. The cases involved in the instant motion comprise two series filed along nine product lines covering power transformers, power switchgear assemblies, low voltage power circuit breakers, distribution transformers, meters, condensers, circuit breakers, turbine-generator units, and power switching equipment. Four of the plaintiff utilities operate in Illinois. They are Commonwealth Edison Company, Central Illinois Electric & Gas Co., Central Illinois Light Co., and Iowa-Illinois Gas & Electric Co. (hereinafter referred to as plaintiffs).

Intervention is sought by the Attorney General of Illinois (1) on behalf of the citizens of the State, who were consumers of the four plaintiffs, to secure refunds out of any recoveries realized herein, and (2) on behalf of the State of Illinois, its agencies and public institutions, to present claims for damages allegedly involving questions of law and fact in common with those of the main actions.

INTERVENTION AS OF RIGHT

The State of Illinois contends that the recovery of damages by these plaintiffs will create a fund for distribution subject to the disposition of this Court and in which plaintiffs' consumers have a direct interest. It further contends that by reason of this fund it is entitled to intervene in behalf of the consumers as a matter of right because (1) the representation of the consumer interest by existing parties may be inadequate, and (2) the consumers may be bound by a judgment or order in this action.

The applicable part of Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.A. states:

"(a) Intervention of right. Upon timely application any one shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action;

or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

The State's theory as to the existence of the "fund" is that the rates and charges for services paid by the consumers were excessive because said rates were based, in part, upon plaintiffs' capital expenditures for electrical equipment for which excessive prices had been conspiratorially fixed. It concludes that that part of a recovery herein which is in the excess over a reasonable rate, constitutes a "fund" in which plaintiffs' consumers have an interest.

The State does not earnestly argue that the consumers will be bound by any judgment or order herein and readily admits that "plaintiffs' consumer-customers are not parties to this suit and, therefore, under the principles of *res judicata* are not bound. * * *" Its principal contention is predicated on the existence of a fund which it alleges is subject to the disposition of this Court. It is clear that the existence and amount of this "fund" must depend on a determination of what was a reasonable and legal rate during the period of the alleged conspiracy.

■■ Since plaintiffs are public utilities, they are subject to the jurisdiction of the Illinois Commerce Commission under the provisions of the Public Utilities Act, S.H.A. Ch. 111⅔. The exclusive power for fixing reasonable rates lies in that body subject to the provided statutory review by the Illinois courts (Peoples Gas Light & Coke Co. v. Slattery, 373 Ill. 31, 25 N.E.2d 482 (1939); Natural Gas Pipeline Co. of America v. Federal Power Comm., 141 F.2d 27 (7th Cir. 1944); Tilney v. City of Chicago, 134 F.2d 682 (7th Cir. 1943)). If rates are alleged to be excessive or improper in any respect, complaint must be made to the State commission. There is a specific Illinois statute providing for recovery of "excessive" rates. The Public Utilities

Act, § 72, S.H.A. Ch. 111⅔, § 76, provides in part:

"When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."

 The law is well settled in Illinois that the statutory remedy for reparations is the exclusive remedy of customers of a public utility who allege that the utility's rates are excessive (Mandel Bros., Inc. v. Chicago Tunnel Terminal Co., 2 Ill.2d 205, 117 N.E.2d 774 (1954); Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm., 304 Ill. 312, 136 N. E. 797 (1922); Burke v. Illinois Bell Tel. Co., 348 Ill.App. 529, 109 N.E.2d 358 (1952); American Generator & Armature Co. v. Commonwealth Edison Co., 298 Ill.App. 192, 18 N.E.2d 735 (1939); Medusa Portland Cement Co. v. Illinois Cent. R.R., 287 Ill.App. 549, 5 N.E.2d 782 (1936); Natural Gas Pipeline Co. of America v. Federal Power Comm., supra; Tilney v. City of Chicago, supra).

In Medusa Portland Cement Co. v. Illinois Cent. R.R., supra, the Court stated the rule thus (287 Ill.App. at p. 561, 5 N.E.2d at p. 787):

"Since the enactment of the Public Utilities Act, section 72 thereof has provided the only method or remedy available in this state for determining whether rates charged by public utilities are fair and reasonable or unfair, unreasonable, and discriminatory. This section of the act also authorizes the commission to award reparation to claimants if rates charged and exacted of them are determined to have been excessive and discriminatory."

After citing several cases to the same effect, the Court, continuing, said (at p. 563, 5 N.E.2d at p. 788):

"It is manifest from these decisions, and they but follow the decisions of the United States Supreme Court construing similar provisions of the Interstate Commerce Act, that *no suit may be maintained in any court in Illinois to recover reparation for excessive or unjustly discriminatory rates unless and until the commission, acting under the authority conferred upon it by section 72, has heard a claim therefor, has found the rates the public utility charged to have been excessive or unjustly discriminatory, and has entered an order requiring the public utility to make due reparation.*" (Emphasis added.)

The Court in both Burke v. Illinois Bell Tel. Co., supra, and American Generator & Armature Co. v. Commonwealth Edison Co., supra, found support for the Illinois rule in a quotation from Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922), where the Court stated thus (at p. 291, 42 S.Ct. at p. 479):

"Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contra-distinction to judicial. But ordinarily the determining factor is not the character of the function, but the character of the controverted question and the nature of the enquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two

classes of cases. It is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts."

Inasmuch as the State seeks intervention of right on behalf of plaintiffs' consumers, it is evident that its rights cannot rise above theirs. The situation where a consumer seeks to reach a "fund" resulting from allegedly excessive rates charged by a utility is not novel in this Circuit. In Natural Gas Pipeline Co. of America v. Federal Power Comm., supra, the original suit arose by the petition of Natural Gas Pipeline Company for review of an order of the Federal Power Commission to reduce its rates. The Court of Appeals issued a stay order pending review, upon a bond filed to protect purchasers of gas at rates in excess of those prescribed by the Commission. Subsequently Natural Gas Pipeline Company filed reduced rates with the Commission, and in satisfaction of its obligation under the stay order, paid into court the six million dollar fund which had accumulated during the period of said stay order. Ultimately the fund was decreed to belong to the consumers of the several utilities to whom Natural Gas Pipeline Company furnished natural gas. After the fund had been distributed, a customer of Peoples Gas Light and Coke Company sought intervention for himself and all other customers similarly situated. Petitioner in that suit contended that since the cost of natural gas purchased by Peoples Gas from Natural Gas Pipeline Company had been reduced, and Peoples

Gas had not reduced its retail rate pro tanto, he and other consumers were entitled to a refund from Peoples Gas measured by said reduction. In dismissing the petition, the Court significantly said (141 F.2d at p. 29):

"What petitioner now asks, is to have this court ascertain that there were excess collections from him and the amount thereof. But the only way that we could do this would be to usurp the functions of the Illinois Commerce Commission by fixing what we consider would have been a reasonable rate for Peoples Company to charge during the period in question, and the specific classes or classes of customers entitled to a refund by reason of the Company's charges in excess thereof. We refuse to do so because this court has no rate-making powers. [Citing cases.]"

Considering the exclusiveness of the statutory remedy for excessive rates, the similarity between the situation of the instant applicant and that of petitioner in Natural Gas Pipeline, and the binding authority of that case, this Court must conclude, as did the Court of Appeals in the latter case, that "The 'fund' or 'trust fund' which petitioner seeks to conjure up is entirely illusory." [1]

Judge Kilpatrick in City of Philadelphia et al. v. Westinghouse Electric Corp. et al. (decided October 23, 1961) (D.C.E. D.Pa.) C.C.H. Trade Cases, ¶ 70,143, in denying intervention to the State Public Utility Commission, said:

"I think * * * that the consumer's interests, which are the only bases on which the application could be sustained, are entirely too remote to permit intervention in this case. * * * I will deny the motion to intervene."

The motion as to intervention of right is denied.

---

1. See annotation, 18 A.L.R.2d 1343 (1951), "Right of customers of public utility with respect to fund representing a refund from another supplying utility upon reduction of latter's rates."

## PERMISSIVE INTERVENTION

The State of Illinois seeks to intervene as a purchaser of electrical equipment and contends that the State's claim and that of the main actions have questions of law and fact in common. The applicable part of Rule 24 Federal Rules of Civil Procedure is stated thus:

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * *In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.*" (Emphasis added.)

■■ A motion for permissive intervention is addressed to the sound discretion of the Court (Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951); Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944)). Although it is certainly not conclusive, the opposition of all the original parties to the main action to intervention is an element for the Court's consideration. The words of Rule 24(b) as italicized above are a caution to the Court so that in its zeal to avoid a multiplicity of suits it will not hamper or vex the claims of the original parties.

■ While it is apparent that the State's claim as to the issue of the conspiracy will present questions of law and fact in common with the main actions, this is not true as to the question of damages. Even assuming for the moment that defendants did engage in a conspiracy, each plaintiff herein must prove that it was damaged in its own property or business by paying higher prices and, lacking such proof, it cannot recover (Keogh v. Chicago & N. W. Ry., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967 (7th Cir. 1943)).

The State avers it has purchased, acquired, and used millions of dollars of electrical equipment in the operation of: 73 hospitals, sanitoria, clinics, and schools; 5 penal institutions, 11,932 miles of highways, 167 miles of expressways and 87 miles of toll roads using extensive electrical structures, facilities, and devices; 65 state parks, lodges, facilities, and fair grounds, plus armories, office and service buildings. The applicant readily admits that "additional trial time will be involved." The size and complexity of the instant two series of cases are manifest. When it is considered that the State intends to bring to suit claims as to an enormous number of purchases, requiring separate proof of damages, including the time, amount and nature of, and prices paid for the purchases made, it is plain that the instant suits will approach unmanageable proportions both in preparation and trial. Applicant further admits that intervention will involve a proportionate increase in the number of witnesses required. A similar situation was aptly characterized by Judge Wyzanski in Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, 51 F.Supp. 972 at p. 973 (D.C. Mass.1943), where he said:

"Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair."

■ The Court has carefully weighed and examined all the factors involved and is of the opinion that to permit intervention by the State will unduly delay and prejudice the adjudication of the rights of the original parties.

The motion for permissive intervention on behalf of the State of Illinois is therefore denied, and counsel for plaintiffs will prepare the necessary order.