308 F.2d 856
 PHILADELPHIA ELECTRIC CO., on Behalf of Itself and All Others Similarly Situated,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Allis-Chalmers Manufacturing Company, General Electric Company, McGraw Edison Company, Moloney Electric Company and Wagner Electric Corporation.
Pennsylvania Public Utility Commission, Appellant.
 No. 13875.
 No. 13876.
 United States Court of Appeals Third Circuit.
 Argued June 7, 1962.
 Decided September 26, 1962.
 Rehearing Denied October 23, 1962.
 
 Miles Warner, Philadelphia, Pa. (William A. Goichman, Asst. Counsel, Philadelphia, Pa., Joseph I. Lewis, Chief Counsel, David Stahl, Atty. Gen. of Pennsylvania, Harrisburg, Pa., on the brief), for appellant.
 W. Bradley Ward, Philadelphia, Pa., for appellees.
 Schnader, Harrison, Segal & Lewis, Edward W. Mullinix, Ira P. Tiger, Philadelphia, Pa., on the brief for Allis-Chalmers Mfg. Co., appellee.
 Drinker, Biddle & Reath, Henry W. Sawyer, III, Philadelphia, Pa., on the brief, for General Electric Co., appellee.
 Montgomery, McCracken, Walker & Rhoads, Charles A. Wolfe, Joseph W. Swain, Jr., Philadelphia, Pa., on the brief for McGraw-Edison Co., appellee.
 White & Williams, W. Wilson White, Philadelphia, Pa., on the brief, for Moloney Electric Co. and Wagner Electric Corp., appellees.
 Pepper, Hamilton & Scheetz, Philip H. Strubing, Philadelphia, Pa., on the brief for Westinghouse Electric Corp., appellee.
 Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 On August 2, 1961, the Philadelphia Electric Company brought this "spurious" class action[1] in the district court against suppliers of electrical equipment, asserting representation of "all public utilities furnishing electric service to consumers in Pennsylvania, all of which are subject to regulation by the Pennsylvania Public Utility Commission". The plaintiff seeks to recover three times the amount of overcharges allegedly unlawful under the federal antitrust laws. The action has not yet progressed much beyond the pleading stage. A month after suit was filed, the Pennsylvania Public Utilities Commission sought leave to intervene. This appeal has been taken by the Commission from the denial of that petition.
 
 
 2
 In essence, the Commissions' petition advanced two justifications for the proposed intervention. First, it pointed out that in the event the Electric Company prevailed in this suit, the Commission "may be obliged" to reexamine and decide what benefits the consuming public should receive by virtue of the utility's recovery. In that event, "without having the status of a party in these proceedings, the Commission will find it difficult, if not impossible, to make * * * allocations or apportionments [between compensatory and punitive damages] nor can it properly determine whether both or only one of these elements of recovery should be considered in determining the benefits, if any, which should be directed to flow to the utility's consumers."
 
 
 3
 Secondly, contemplating the possibility of a settlement, the Commission believes that as "the sole statutory representative of the Pennsylvania public at large", it is imperative in the public interest that the Commission should be "present in the status of a party at any settlement negotiations" because it "believes that its presence and participation may be helpful toward assuring that any recoveries * * * made by way of settlement shall be proper and adequate, and that the Court will have available, if it desires, the Commission's special knowledge of public utility operations and regulation which affect the many aspects of these cases."
 
 
 4
 In its brief on this appeal, the Commission has suggested yet a third reason for permitting it to intervene: that it is the guardian of the interests of the consuming public, who may be the ultimate beneficiaries of a recovery by the electric company, and if intervention is denied, "once these recoveries are made, whether by judgment or by voluntary settlement, the Commission will be wholly without opportunity to appear or to be heard on the issues of fairness or adequacy."
 
 
 5
 The Commission asserts no justiciable claim against any party to the suit. Although it filed a proposed "complaint", to comply with Rule 24(c), 28 U.S.C., the pleading seeks no judgment in favor of the Commission but states that the "proposed intervenor incorporates herein and adopts as its own, the averments of plaintiff's complaint." In brief, the Commission asks merely that the plaintiff recover in accordance with its complaint.
 
 
 6
 After argument, the lower court denied leave to intervene. Although no written opinion was filed, the court indicated from the bench the reasons for its decision. It thought that the Commission could seek intervention only as "an agent of the consumers of electric power who are in the areas affected by the alleged conspiracy * * *", and that, acting in such capacity, the Commission had to show a right in the consumers under section 4 of the Clayton Act, 15 U.S.C.A. § 15, which permits suit only by those injured in their property or business. The consumers as a group could not meet this requirement. In sum, the interest sought to be represented by the Commission was in the view of the court below, "entirely too remote to permit the intervention * * *."
 
 
 7
 On October 24, 1961, the clerk made a docket entry pursuant to the court's oral ruling. On November 2nd a written order denying leave to intervene was filed and an appropriate docket entry was made. Out of an abundance of caution the Commission has filed separate timely appeals from these orders.[2] However, nothing turns on this since the same matter is presented by both appeals. Thereafter, the defendants moved to dismiss this attempted appeal of right for lack of jurisdiction, but this court reserved decision on this question until after argument on the merits.
 
 
 8
 The first issue for this court is whether the denial of leave to intervene is appealable of right. When an absolute right to intervene in a lawsuit is claimed, and the claim is rejected, the order denying intervention is considered final and appealable. E. g., Sam Fox Publishing Co. v. United States, 1961, 366 U.S. 683, 687-688, 81 S.Ct. 1309, 6 L.Ed. 2d 604; Sutphen Estates, Inc. v. United States, 1951, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19; Brotherhood of R. R. Trainmen v. Baltimore & O. R. R., 1947, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646; Allen Calculators, Inc. v. National Cash Register Co., 1944, 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188; Missouri-Kansas Pipe Line Co. v. United States, 1941, 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975; Hirshorn v. Mine Safety Appliances Co., 3d Cir., 1951, 186 F.2d 1023. But in those situations where the law grants the trial court discretion to permit or deny intervention in the interest of the fair and efficient administration of justice, it is held that an appellate court has no jurisdiction to review a denial of leave to intervene, except upon the issue of alleged abuse of discretion. E. g., Sutphen Estates, Inc. v. United States, supra; Allen Calculators, Inc. v. National Cash Register Co., supra; Kennedy v. Bethlehem Steel Co., 3d Cir. 1939, 102 F.2d 141.
 
 
 9
 Both the wrongful denial of an absolute right to intervene and, alternatively, an abuse of discretion are claimed here. Therefore, this appeal is well taken and must be decided on its merits.
 
 
 10
 Rule 24(a) of the Federal Rules of Civil Procedure deals with the subject of intervention of right.[3] That rule confers upon an interested person an unqualified right to intervene in an action "(2) When the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action". Even if the phrase "bound by a judgment in the action" is construed to embrace any prejudice to the legal rights or interests of the would be intervenor, no such prospective injury has been shown here.
 
 
 11
 The Commission argues that it may undertake to require that at least part of any recovery in this suit be reflected in reduced rates of the plaintiff's customers, consumers whose interests the Commission serves and protects. It is anxious, therefore, that the amount of recovery, whether by settlement or otherwise, shall be as large as may be proper and that the Commission be fully informed as to all transactions connected with the prosecution and disposition of the litigation that may help it in determining what part of any recovery shall be allocated to the reduction of rates.
 
 
 12
 To the extent that the concern of the Commission is that the plaintiff recover the full amount to which it is entitled, the Commission's interest and that of the plaintiff are identical. There is no suggestion that the plaintiff does not have highly competent counsel. Nowhere has the Commission suggested any fear or any basis of apprehension that the plaintiff will not pursue its suit with vigor as well as skill. Indeed, at oral argument counsel for the Commission expressly stated that no such contention was made. In these circumstances, if the Commission desires to make witnesses available who have some information relevant to the plaintiff's claim, or if it thinks it can supply useful expert opinion as a friend of the court, there is no reason to believe that the plaintiff or the district court, as the case may be, would reject any proper tender of assistance in the just disposition of the pending litigation. We conclude, therefore, that any interest the Commission may have in the adequacy of the plaintiff's prospective recovery cannot be a basis for intervention of right, particularly since Rule 24(a) (2) expressly requires that the would be intervenor shall show that "the representation of the applicant's interest by existing parties is or may be inadequate".
 
 
 13
 An additional point argued in this connection is plainly without merit. The Commission expresses fear that it will not be informed how much of any recovery is compensatory and how much represents punitive damages. Section 4 of the Clayton Act, 15 U.S.C.A. § 15, under which the plaintiff claims damages, expressly provides that the injured person "shall recover threefold the damages by him sustained * * *." In practice, decisions under this section indicate both the amount of actual damage and the trebled amount for which judgment is entered. But even if only the total amount of the recovery should be stated, the actual damages are determinable merely by dividing the amount of the judgment by three.
 
 
 14
 Only brief mention need be made of the Commission's contention that it desires to know what takes place in the course of litigation and particularly the circumstances underlying any settlement. The Pennsylvania Public Utility Code gives the Commission broad power to require that utilities supply "reports concerning any matter whatsoever about which the commission is authorized to inquire, * * * or which it is required to enforce", and "furnish any and all * * * information to the commission * * * required, in any inspection, examination, inquiry, investigation, hearing, or determination [of the value of the utility's property]." 66 P.S. §§ 1345, 1346. These provisions give the Commission simple and direct means of obtaining the complete details of any settlement which increases the assets of a utility and may affect its rates.
 
 
 15
 All of these factors considered we are satisfied that no basis was shown for intervention of right under the mandate of Rule 24(a) (2). It may well be, as the Commission contends, that in special circumstances a court should allow intervention to protect an applicant against hurtful practical consequences of a pending suit that are not technically within the language of Rule 24(a) (2), as was done in Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293. But what has already been said indicates that the requested intervention here has not been shown to be vital to the protection of the public interests of which the Commission is the guardian. Certainly it does not appear that as a result of not being a party to this suit the Commission will suffer any substantial handicap in performing its duty with reference to any recovery by the plaintiff in this suit.
 
 
 16
 A fortiori, if the Commission's application is viewed as a request for permissive intervention, there is no showing of such clear and substantial advantage from the allowance of intervention as could make its denial arbitrary or an abuse of discretion. It is always a consideration against permissive intervention that additional parties "take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like * * *." See Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., D. Mass.1943, 51 F.Supp. 972, 973. Of course, Rule 24(a) (2) expressly commands that in exercising its discretion upon an application for permissive intervention the court shall consider the delay involved.
 
 
 17
 In thus disposing of this appeal we have not found it necessary to consider the conclusion of the court below that the stated interest of the Commission in the pending litigation is not even the kind of a claim upon which a court may, in its discretion, grant permissive intervention. Cf. Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 1962, 207 F.Supp. 252, in the District Court for the Northern District of Illinois.
 
 
 18
 On the appeal at our No. 13,876, the judgment will be affirmed. The separate appeal on identical grounds at our No. 13,875 will be dismissed.
 
 
 
 Notes:
 
 
 [1]
 This is one of the several similar suits and we are told that the parties have stipulated that our decision on this appeal shall control the issue of intervention in all
 
 
 [2]
 In addition, the Commission asked us to entertain an appeal as from an interlocutory order, as we are permitted to do under 28 U.S.C. § 1292(b). On December 18, 1961, we denied that motion
 
 
 [3]
 "(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."
 
 
 
 19
 McLAUGHLIN, Circuit Judge (dissenting).
 
 
 20
 Appellant is the Commonwealth of Pennsylvania Public Utility Commission which, as alleged, is the Commonwealth's "* * * governmental and public agency solely charged with and responsible for the regulation in the public interest of the rates received and service rendered by the plaintiff in these actions and all of the other public utility members of the class." This and fifteen similar suits seek to recover on behalf of plaintiff and all other electric utilities under appellant's regulatory jurisdiction, overcharges said to have been paid by them in connection with the purchase of power transformers manufactured and sold by defendants from May 1956 to date. The overcharges are stated to have resulted "from certain combinations and conspiracies in restraint of trade said to have been entered into between the defendants in violation of the Clayton Act, 15 U.S.C. 1."
 
 
 21
 The Commission asserts its interest in this and the related actions because of the fact that the contemplated recoveries by the utility plaintiffs may oblige the Commission to reexamine its rate making factors so as to determine whether there should be refunds, lowered rates or both to the consumer public. And the Commission urges "that it is imperative in the public interest that it, the sole statutory representative of the Pennsylvania public at large, be present in the status of a party at any settlement negotiations, pretrial conferences, and similar proceedings, which may be held after these suits are at issue. The Commission believes that its presence and participation may be helpful toward assuring that any recoveries which may be made by way of settlement shall be proper and adequate, and that the Court will have available, if it desires, the Commission's special knowledge of public utility operations and regulation which affect many aspects of these cases. In stating this belief, the Commission is thoroughly aware of the rule that class litigation is not subject to settlement without approval of the Court. It nevertheless believes, and respectfully represents, that the amount of the recoveries which are sought in these suits, as well as the important issues of law and fact which are involved, justify its intervention as a party."
 
 
 22
 I see no negation of the presence of a clear public interest, or of the rightness of the Commission's acceptance of its responsibility to represent that interest. The objection really stressed and urged as overwhelming is that the Commission at this initial point of the litigation is unable to put a hard dollars and cents figure on that public interest. That there will be recoveries in these claims; that they will probably be by way of settlement; that the amounts will be large; that they will affect the Pennsylvania utility rates as the Commission alleges, no one seems to seriously doubt.
 
 
 23
 The district court thought such a substantial question of law and fact was involved in the issue that it certified the case for immediate appeal. This court, while denying formal intervention, would permit a sort of back door, illusory intervention by assuming that "there is no reason to believe that the plaintiff or the district court, as the case may be, would reject any proper tender of assistance, in the just disposition of the pending litigation." In passing, it should not be necessary to note that it is not the plaintiff but the defendants who oppose the Commission's request to be given a legitimate status in the proceedings.
 
 
 24
 The majority is satisfied that the Commission does not meet the requirement of Rule 24(a) (2). As I see it, that satisfaction is unwarranted. The Commission affirmatively alleges as above quoted that it is imperative that it, as the public's representative, be present at any settlement negotiations, pretrial conferences, etc. after the suits are at issue. It states that it "* * * believes its presence and participation may be helpful toward assuring that any recoveries which may be made shall be proper and adequate * * *." (Emphasis supplied). A literal reading of the rule calls for no more than this. As the majority states: "That rule confers upon an interested person an unqualified right to intervene in an action `(2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by the judgment in the action'". It is the Commission's deep conviction that settlement of the claims, if that occurs, should be closely scrutinized by it during the negotiations therefor, not after settlement is an accomplished fact. That concept is substantially acceded to by the court but the latter misconceives its purpose. The Commission is not seeking to check the final settlement figures and mechanically adjust rates and refunds from that source. What the Commission expressly desires is to have full knowledge of the settlement negotiations while they are being conducted. Its purpose is to make sure that the settlements themselves are fair with particular reference to the consumer public. At the outset of this proceeding the Commission shows its origin, shows the grave existing margin for error or worse and how complete, simple, justified provision against it can and should be taken. Defendants in their pretentious objection to this are displaying a very late righteous attitude, impossible to justify under the allegations of the complaint detailing the basis for this suit.
 
 
 25
 Not only is the Commission within the expressed language of Rule 24(a) (2) as seen above but in addition the sound law is that it need not come within the exact statement of the rule where it is in the salutory process of guarding the public from the substantial harm that could well arise out of these cases if the Commission is barred from appearing. That is the doctrine of Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), and so conceded by the court opinion. It is to prevent that further addenda to this whole nauseating mess that the Commission asked leave to participate.
 
 
 26
 Under the second independent ground for granting appellant's application, it is admitted that the district court could have properly allowed the application. However, states the majority, the denial was not arbitrary or an abuse of discretion. The reason advanced for that conclusion is that there is "* * * no showing of such clear and substantial advantage from the allowance of intervention as could make its denial arbitrary or an abuse of discretion." (Emphasis supplied). The court again stresses what it considers the grave fault of the Commission's position, namely, that the Commission does not contend that if it is refused intervention, the public will necessarily be mulcted. And once again sharp attention must be directed to the Commission's primary motivation in making its timely application — the elimination of possible inadequate handling of these important claims.
 
 
 27
 On this branch of the appeal the court, to justify washing its hands of the Commission's request, cites the delay the Commission participation would occasion. It suggests that at the least there would be "additional questions, objections, briefs, arguments, motions and the like * * *." Actually that time element of itself would be small but even so it is not of the essence here. The "just determination" of these actions as stated in Rule 1 of the Federal Rules of Civil Procedure is the true goal and the only goal. That course is charted in the forward looking, most acceptable decision (not mentioned by the court) of Mitchell v. Singstad, 23 F.R.D. 62 (D.C.Md.1959).
 
 
 28
 The complacent, resigned view that nothing can or should be done to take care of the imperative public interest in these actions leaves me fundamentally uneasy. The arguments of the appellee — not within the letter of the rule, delay, turn the trial into a brawl — strain too much. The acquiescence in them by the court brushes aside the impressive merit of appellant's position. It should not be so casually rejected. A large segment of the people of Pennsylvania have a tangible stake in this final reckoning of defendants' unconscionable activities. They are entitled to have their expert, responsible representative in a position to check on it now and not be relegated to some meaningless gesture after the final disposal of the claims.
 
 
 29
 I would allow the Commission to intervene.